## STATE v. JAY KASPER AND ANOTHER.[1]

### May 31, 1918.

### No. 20,772.

**Indictment good.**

1. An indictment under section 8669, G. S. 1913, examined and *held* sufficient.

**Criminal law — question whether proof was sufficient for conviction.**

2. The record leaves it doubtful whether the full measure of proof required in criminal convictions was presented at the trial.

**Same — prejudicial errors.**

3. In that situation errors during the trial are more likely to prejudicially affect defendants' right to a fair trial than where proof of guilt is strong and clear.

[1]Reported in 167 N. W. 1035.

**Same — defects in charge.**

4. The errors and defects in the charge, while not available as grounds for reversal, should be avoided on another trial.

**Same — rulings on evidence prejudicial.**

5. Certain rulings on the admission and exclusion of testimony examined and *held* erroneous and prejudicial to defendants.

**Same — opinion of nonexpert witness.**

6. A witness, who is not an expert and who has not attempted on direct examination to express his opinion, should not be required to give one on cross-examination.

**Same — credibility of witness.**

7. An issue having no bearing upon the charge against defendants should not have been brought in for the purpose of testing their credibility, or for any other purpose.

Defendants were indicted by the grand jury charged with the crime of wilfully endangering or injuring the life and health of a minor child, tried in the district court for Steele county before Childress, J., and a jury which found them guilty as charged in the indictment. From an order denying a new trial and from the judgment sentencing them to imprisonment for 10 months, defendants appealed. Reversed.

*Leach & Leach,* for appellants.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, and *F. A. Alexander,* County Attorney, for respondent.

HOLT, J.

Defendants were prosecuted and convicted under this provision of section 8669, G. S. 1913: "Every person having the care and custody of a minor who— 1. Shall wilfully cause or permit his life to be endangered, his health to be injured * * * shall be guilty of a gross misdemeanor." They appeal.

The indictment is assailed. It may be subject to some criticism, but withal we think it states facts in a sufficiently direct manner to show a violation of the statute referred to. It alleges that defendants had the care and custody of Anna Somdahl, a child of about 6 years of

age; that it was their legal duty to properly feed and care for her; that they wilfully caused and permitted her health to be injured and her life to be endangered by wilfully failing and neglecting to furnish her with the necessary food, clothing, care, nursing and medical attention, and that they wilfully beat her, kept her in a cold room in the winter season, permitted her to become starved and emaciated for want of proper food and other acts of neglect from which treatment she became sick, weak and emaciated and her body covered with bruises and sores. We do not think the indictment should be construed as stating two separate charges, but rather the one charge of wilfully permitting the health of the child to be injured and her life endangered by the various specified acts and omissions.

It is contended, very earnestly, that the evidence does not support a conviction. The record has been examined with care, and we must say that it is extremely doubtful whether the proof of guilt, as to either defendant, measures up to the standard demanded in a criminal case.

Defendants appear to be intelligent, respectable middle aged people in comfortable circumstances, living in a modern, hot water heated home on their farm in Steele county. Their only children were two boys 12 and 6 years old, respectively. Mrs. Kasper desired to have a little girl in the family. And, on December 23, 1915, they received from the Childrens Home Society, at St. Paul, Anna Somdahl, then about 3 years old, who had been abandoned by her divorced parents. The intention was to legally adopt her if she proved to be such a child as they had in mind. When defendants took Anna she had not fully recovered from a siege of whooping cough. During the summer eruptions or boils broke out on her head or face, and a sort of ringworm developed at the roots of the finger nails. She became pale and emaciated towards the fall, though there is testimony that she was gaining after New Years of 1917. In February gossip of abuse came to the ears of a county commissioner, who thereupon, in company with two other persons, visited defendants' home and saw the child. The following day she was taken away, and returned to the institution from whence she came. No attempt will be made to set out the substance of the evidence, but we merely wish to state certain undisputed matters which strongly question the correctness of the verdict.

There is no testimony of any eye-witness to any whippings, or other abuse of the child, by either of the defendants. The only thing in the record of that nature is an admission, of which the state offered proof, that Mrs. Kasper, in speaking to a couple of lady friends, said that she would expend no more of her strength in whipping the girl to make her keep clean, for whipping did no good. The medical experts for the state agreed with those of defendants that the child's health was not such that medical treatment was required at the time she was taken from defendants, and she was given none. The nurses at the Home merely gave her rest, rubbed her skin with olive oil, and put her on a light diet. None of the medical experts claimed that the eruptions or sores that the child had suffered from, or the disease that attacked the finger nails, were due to the lack of either care, clothing or food. Nor did any one of them venture the opinion that the anaemic or emaciated condition of the child was due to causes within defendants' control. A child may be under nourished though it partakes of an over abundance of food. It may well be that, through inexperience and want of knowledge, defendants did not give Anna that attention which she would have received had she remained in the Childrens Home Society, where competent nurses, by daily contact with children of the delicate type as well as of the robust, learn how to meet the individual requirements of each child. But the statute referred to does not undertake to punish a person, because he has not the knowledge or experience to give a child in his keeping that care which another with more knowledge and more experience might give. There must be shown some act or omission which the defendants, as ordinarily prudent persons, would know to be likely to injure the health or endanger the life of the child in order to convict.

Doubting the justice of the conviction and mindful of the undue severity of the sentence imposed of 10 months in the county jail without the option of a fine, we think the defendants should have a new trial if the record discloses errors, unless it be clear that no prejudice resulted from such errors. Another consideration forbids brushing aside errors that might have affected the verdict. We all realize how difficult it is for court and jury to hold the scales of justice evenly balanced when a little child is on the one side. In such a case great

care should be taken to exclude matters having no legitimate bearing upon the issues, and which, if allowed to come in, might serve to arouse feeling against the accused and set the imagination of the jury at work to look for evidence of guilt in the most innocent and trivial occurrences.

There was obvious error in this part of the charge: "If upon an examination of all the evidence in the case, the jury are convinced beyond a reasonable doubt, that one of these defendants is guilty and the other defendant is not guilty, then it is your duty to return a verdict of guilty against that one and a verdict of not guilty against the other." This is undoubtedly an inadvertent statement that should have been called attention to, before the jury retired, in order to avail on appeal. And standing alone it should not work a reversal.

The court's charge as to circumstantial evidence is, perhaps, technically correct. But since the state was permitted to drag in, through an inordinate lengthy cross-examination of defendants and their witnesses, a multitude of circumstances which had no legitimate bearing upon the issues, as, for instance, whether or not the toilet in the house was out of order, whether defendants could not have fenced in the orchard so as to prevent the child from getting at the apples which perhaps were not fit for her to eat, or whether she could not have been tied up so as to accomplish the same thing, whether she was taken out in the automobile every time it was used, and any number of like trivial matters, some attention ought to have been directed to the issues in hand, namely, whether the circumstances referred to pointed to a wilful act or omission tending to endanger the life or injure the health of the child to defendants' knowledge. Instead, two circumstances only were alluded to: Whether or not the child was crippled and whether or not it was in bad health. There was evidence by one or two witnesses that two or three of her fingers were somewhat crooked or bent, and the hand was exhibited to the jury, but there is no evidence whatever that such condition required any treatment or that it was due to any act or omission of defendants. Referring to the child as a cripple, because of the slight deformity of the fingers to which no importance was attached except by a witness or two on rebuttal, was an

unfortunate slip of the tongue which tends towards placing defendants in an unfavorable light before the jury.

Of vital importance, it seems to us, in a case where stress is laid on circumstantial evidence, and where one of the essential ingredients of the crime is the wilfulness of the act, are the circumstances indicative of want of motive. No reference whatever was made thereto. It may be true that defendants cannot complain, since no instruction in that direction was asked. But we think, in fairness, when allusion was made to a circumstance not properly of any probative force some reference should have been made to one of real worth. There could be no possible motive to impair the health or cause the death of the child. Defendants carried no insurance on her life. No duty or obligation imposed upon them the burden to care for her. They were free to return her any day. A 4-year old child could render no service to compensate for the care and expense connected with its keep for years to come, and, if future services were desired, ordinary self interest would call for a treatment that would best promote its health and growth.

What has now been said explains the attitude in which we feel constrained to consider the errors assigned upon certain rulings on the admission and exclusion of testimony. After a medical expert, called by the state, had testified, on cross-examination, that the child's life and health were not in a dangerous condition when he examined her, a few days after she was taken away from defendants, he was permitted, on redirect, over objection, to answer this question: "Doctor, if the child had remained in the condition in which it was without proper nourishment and proper care, would you consider that the child's health and life was in danger?" The question assumes that in the future defendants would have violated their duty, even though it had not appeared that they had so done in the past. Every child of tender years is in constant need of proper nourishment and proper care.

Doctor Hart was called by the state and testified that the child, when taken away from defendants, looked anaemic, emaciated and under-nourished. This opinion coming from a professional man was undoubtedly intended to convey the idea to the jury that the child was purposely starved. We think defendants were entitled to ask the doctor

on cross-examination, whether, if the child had been troubled for a long time with vomiting after meals, it would not account for the condition in which he saw her that day.

On a Sunday afternoon in December, 1916, defendants and their family, including the girl, visited a neighbor where one of the witnesses for the state worked. While this witness was in the barn, the children came in and stood by the swill can. And he testified that defendants' little boy took Anna by the hand and led her away, saying: "She will eat that." Defendants' counsel moved to strike this evidence. The motion was denied. The ruling was error. There is no evidence that defendants were in the barn. Nor that the child attempted to eat of the swill. The visit in the house was for about 4 hours, but the witness was not there half of the time. He said he did not see the girl eat, but neither did he say that any other person had anything to eat during the visit. The inference likely to be drawn by the jury from the testimony, thus wrongfully allowed to remain, was that the child was being starved.

One Franklin Simon, a young man, was called by defendants and testified that when he had had meals at their home the girl ate at the same table. He also testified that she looked pale and had a boil on her forehead; also that he saw no one abuse the child, nor heard her cry. He was installing a milking machine and stayed overnight with defendants. Then, on cross-examination, over defendants' objection, the witness was required to express an opinion as to whether, if the girl had been his little sister, he would not have thought she looked as if she was not well taken care of, and whether he wouldn't think that her condition was rather serious, and whether it would not worry him, and whether he would not get some advice about her condition. Manifestly this was error. The witness had not, on direct examination, expressed any opinion concerning the health of the child. He was not an expert. The chief and only purpose for which he was called was to contradict the state's evidence that the child was not allowed to eat at the table with the rest of the family, and that he saw no maltreatment of her.

The state, against defendants' objection, was permitted to show that they had received an 11 year old girl from the state school at Owatonna

in 1906, and that she had been returned, and was also allowed to litigate, upon the issue thus wrongfully injected, the question whether she was returned voluntarily, or by request of the superintendent of the school after an investigation. We think this evidence should have been excluded as immaterial and irrelevant. The credibility of witnesses is not to be impeached by injecting irrelevant and immaterial issues and then contradicting them thereon.

We need not refer to any other assignments of error of minor importance. They are not likely to arise on a retrial of the case.

The judgments and orders are reversed and defendants are granted a new trial.

HALLAM, J. (dissenting).

My opinion is that the irregularities in the trial of this action were not of sufficient consequence to warrant a reversal in view of the rule followed by this court that "new trials should be granted only where the substantial rights of the accused have been so violated as to make it reasonably clear that a fair trial was not had." State v. Nelson, 91 Minn. 143, 97 N. W. 652.