ROSE BOUTANG v. TWIN CITY MOTOR BUS COMPANY
AND OTHERS.
NORTHERN STATES POWER COMPANY, RESPONDENT.

80 N. W. (2d) 30.

November 23, 1956—No. 36,715.

*Michael J. Welsh, John E. Castor,* and *Gordon Paterson,* for appellants.

*Eugene A. Rerat, Gerald E. Magnuson,* and *Larson, Loevinger, Lindquist, Freeman & Fraser,* for plaintiff-respondent.

*Durham, Swanson & Lasley,* for defendant-respondent.

MATSON, JUDGE.

In a personal injury action defendant bus company and the defendant bus driver appeal from an order denying their motion for judgment notwithstanding the verdict or for a new trial.

On April 11, 1952, at about 3:30 p. m., plaintiff, at the southwest corner of the intersection of Eighth Street South and Nicollet Avenue in Minneapolis, was injured by broken glass falling from the top of an ornamental light pole as she stood on the sidewalk waiting to enter defendant's southbound bus which was then approaching the curb to make its customary stop for passengers. The top of the cast iron and steel light pole was surmounted by two light fixtures mounted on a horizontal crossarm. Each of these light fixtures consisted of a light bulb surrounded by a large glass globe about three feet high. On top of each globe was an ornamental glass canopy. One light fixture was mounted on the end of the crossarm projecting over and at right angles to the sidewalk and the other on the end projecting toward the street. The distance from the sidewalk level to the top of the light fixtures was about 23 feet.

Pursuant to a contract with the city, the defendant Northern States Power Company was responsible for the care and maintenance of the light pole and the light fixtures. Plaintiff in her complaint alleged that the crashing down upon her of glass from the light pole was proximately caused by the negligence of the bus company and its driver in operating the bus in a manner whereby it struck the light pole and also by the alleged negligence of the defendant Northern States Power Company in its care and maintenance of the light fixtures. The jury found for the plaintiff against the defendant bus company and its driver but not against the defendant Northern States Power Company. As between the defendant bus company and the defendant power company, the basic issue of fact is whether the accident occurred because the bus collided with or contacted the light pole with sufficient force to jar the overhead light globe and canopy loose from the crossarm or whether such light fixtures came loose and fell because of improper installation and maintenance by the defendant power company.

Issues arise as to the alleged error of the trial court (1) in refusing to submit the rule of res ipsa loquitur to the jury; (2) in failing to instruct jurors as to the right to draw inferences; (3) in failing to instruct the jury upon unavoidable accidents; (4) in failing to submit a verdict form whereby the jury could find that all defendants were free of negligence; (5) in failing to instruct the jurors that they could find no permanent injuries unless plaintiff was knocked unconscious by the falling glass; (6) in instructing the jury that it was negligence if the bus came in contact with the light pole; (7) in admitting a hospital record containing hearsay statements of plaintiff's subjective symptoms; (8) in misstating the evidence to the jury in giving the charge; as to the alleged misconduct of counsel (9) in remarks to the jury concerning the hospital record; (10) in arguing to the jury matters not in evidence; as to the further alleged error of the trial court (11) in refusing to permit an expert witness to answer a hypothetical question; and (12) in limiting cross-examination of the power company's expert witness; and finally as to the contentions (13) that the verdict is not sustained by the evidence; and (14) that the verdict is excessive.

This is a scatter-gun appeal in which the trial court is charged with having committed a multitude of errors. Despite the unlikelihood that any trial judge could commit that many prejudicial errors in a single trial, careful consideration has been given to each point raised.

■ The trial court properly refused to instruct the jury on the rule of res ipsa loquitur as applied to the alleged negligence of the defendant Northern States Power Company. It would have been error to do so. It is elementary that the res ipsa loquitur rule has application only where the apparent cause of the accident is such that the defendant would be solely responsible for any negligence connected with it; and if an unexplained accident may reasonably be attributed to one or more causes for which the defendant is not responsible, it is error to apply the rule as a basis for a permissive

inference of negligence.[1] In this case the jury found that the cause of the accident was the negligence of the defendant bus company and its driver in operating the bus. Obviously the defendant power company could have no responsibility for the negligence of the other two defendants.

■ No error resulted from the trial court's omission to instruct the jurors of their right to draw inferences. Generally, a trial court is not required to instruct the jury as to what inferences of fact may be drawn from the facts in evidence. Although counsel in addressing the jury may ask the jurors to draw reasonable inferences from the facts in evidence, it does not follow that he can complain because the court omitted instructions thereon. In the ordinary case, as here, the drawing of inferences is a matter of commonsense logic and reasoning which the jurors will normally use without express direction or guidance of the court. Knott v. Hawley, 163 Minn. 239, 203 N. W. 785. We see no merit in the contention that the omission was equivalent to an instruction that the drawing of inferences was prohibited.

The allegation that the court erred in not instructing the jury on the issue of unavoidable accidents is wholly without foundation since the jurors were specifically told that "the fact that an accident happens does not necessarily entitle a party to recover damages." Neither discussion nor authority is required to establish a lack of merit in appellants' contention that the failure to instruct on res ipsa loquitur and on the right to draw inferences, and on the alleged failure to charge the jury in unavoidable accidents was tantamount to a directed verdict against appellants on the issue of liability.

Related, however, to the question of unavoidable accident is the issue that arises from the trial court's refusal to give the jurors a

---

[1]Barnes v. Northwest Airlines, Inc. 233 Minn. 410, 47 N. W. (2d) 180; Heffter v. Northern States Power Co. 173 Minn. 215, 217 N. W. 102; Sullivan v. Minneapolis St. Ry. Co. 161 Minn. 45, 200 N. W. 922. As to the application, scope, and function of the res ipsa loquitur rule, see Rules of Civil Procedure, Rule 43.06; Prosser, Torts (2 ed.) § 42; McCormick, Evidence, § 309; 13 Dunnell, Dig. (3 ed.) § 7044; 38 Am. Jur., Negligence, §§ 295 to 311, 355; 20 Am. Jur., Evidence, §§ 133, 218.

verdict form permitting them to render a verdict exonerating all defendants of negligence. We find no error in the court's refusal since, upon the evidence adduced, the breaking of the light globe must have been caused by the negligence either of the defendant bus company or of the defendant power company or by the negligence of both of them. There was no other circumstance, force, or factor at work at the time of the accident, such as wind or lightning, to which the falling and breaking of the light globe could be attributed. See, Jacobsen v. Dailey, 228 Minn. 201, 210, 36 N. W. (2d) 711, 716, 11 A. L. R. (2d) 1429. This view of the evidence is corroborated by counsel's own emphatic statement to the jury that in his opinion the plaintiff was entitled to some verdict for damages in the case.

■ The request for an instruction that the jury must find that the plaintiff was knocked unconscious before it could find any permanent injury was properly denied. Although a party is entitled to a specific instruction on his theory of the case, there must be evidence to support that theory. Hagen v. Snow, 244 Minn. 101, 69 N. W. (2d) 100. It is apparently appellants' position that plaintiff's doctors conceded that their diagnosis depended on plaintiff's being knocked unconscious by the blow. This contention is not supported by the record since it reveals only a concession that unconsciousness does not necessarily indicate a concussion. The jury could reasonably find from the expert testimony that certain of plaintiff's permanent injuries, e.g., radiculitis of the shoulder nerves, were not dependent on a finding that plaintiff had lost consciousness. Furthermore, there was ample evidence to sustain a finding that plaintiff was knocked unconscious. Clearly the requested instruction was not applicable and the court was justified in refusing it. See, Glendenning Motorways, Inc. v. Anderson (8 Cir.) 213 F. (2d) 432, 436.

The court's charge that a finding by the jury that the bus contacted the pole would constitute negligence was neither erroneous nor prejudicial. The inanimate and stationary light pole could not possibly run into the bus, and any contact between the pole and the bus had to stem from the negligent operation of the latter.

Furthermore, the trial court correctly pointed out that a finding of negligence by itself would not establish liability without a further finding that such negligence was the proximate cause of the accident.

There was no prejudicial misstatement of fact in the charge to the jury when the court said there was some testimony that some part of the bus struck the sign on the light pole or some part of it. The court's statement of the facts as a whole made it clear that the evidence was in conflict and that this conflict was to be resolved by the jury.

 The trial court did not err in admitting into evidence a hospital record without first having deleted therefrom the diagnosis of a physician who was not called to testify and whose diagnosis and related medical comments recorded thereon were based in part on objective observations and in part on subjective symptoms and medical history relating to the injury. In Brown v. St. Paul City Ry. Co. 241 Minn. 15, 26, 62 N. W. (2d) 688, 696, 44 A. L. R. (2d) 535, 547, we adopted the rule that:

"* * * under M. S. A. c. 600 hospital records and charts, properly identified, are admissible when not privileged to prove *diagnosis, treatment, or medical history* of the patient *pertinent to the medical and surgical aspects* of the case but * * * [any] hearsay and self-serving statements contained therein are not admissible to prove how an injury occurred, at least when offered by the patient." (Italics supplied.)

Although the Brown case rule requires that before a hospital record is admitted into evidence there must be eliminated therefrom any hearsay and self-serving statements *concerning the manner in which the accident which produced the patient's injuries occurred,* that limitation upon admissibility does not apply to those nonprivileged portions of the record which relate solely to a medical history of the patient and are pertinent to the medical and surgical aspects of the case nor to those pathological observations thereon—even though based in part on subjective as well as on objective symptoms—which are germane to a proper diagnosis and treatment of the patient's injuries. It is immaterial that the physician who made the entries

is not called as a witness, since, as we stated in the Brown case (241 Minn. 26, 62 N. W. [2d] 696, 44 A. L. R. [2d] 547), "The purpose of the uniform business records as evidence act was to make it unnecessary to call as witness the parties who made the entries."[2]

We next turn to the alleged misconduct of counsel for the defendant power company when he made the following remarks to the jury in discussing what effect a contact between the bus and the lower part of the cast iron pole would have upon the top of the pole. He said:

"Now, we claim this was from the blow, there was some kind of a snap, or whatever you want to call it, and when it is applied from the bottom 23 feet up, that would be exaggerated. It would be a small whip because of the metal itself, but it would be a fast thing * * *."

Appellants contend that it was prejudicial to attribute *upon the evidence adduced* any difference in movement between the bottom and the top of the pole such as a snap or a small whip. We cannot say that the evidence did not justify an inference of a small whip or a snap in movement. In any event it would be unreasonable to hold the remarks prejudicial. Lex non curat de minimis.

■ Counsel for defendant power company read to the jury from the complaint and also from the answer of the defendant bus company. No error occurred. Although it is ordinarily improper for either court or counsel to read pleadings to the jury, an admission in a pleading—even without its introduction in evidence—may be read to the jury in argument *for the adversary of the pleader*. Hork

---

[2]The quotation in the Brown case from McGowan v. City of Los Angeles, 100 Cal. App. (2d) 386, 392, 223 P. (2d) 862, 866, 21 A. L. R. (2d) 1206, 1213, can best be understood in the setting of its immediate context as set forth in the following quotation:

"* * * The statute does not change the rules of competency or revelancy with respect to recorded facts. It does not make that proof which is not proof. It merely provides a method of proof of an *admissible* 'act, condition or event.' *It does not make the record admissible when oral testimony of the same facts would be inadmissible.*" (Part italics supplied.)

v. Minneapolis St. Ry. Co. 193 Minn. 366, 258 N. W. 576.[3] Likewise it was not prejudicial for counsel to comment on the read portions of the pleadings. The case of Ferraro v. Taylor, 197 Minn. 5, 265 N. W. 829, involving the impropriety of counsel testifying as a witness, is clearly not in point.

■ The further contention that counsel for defendant power company set himself up as an expert on the interpretation of photographs and so was guilty of misconduct is wholly without merit. In addressing the jury counsel may comment on properly received evidence. Rappaport v. Boyer & Gilfillan Motor Co. 239 Minn. 477, 59 N. W. (2d) 302.[4]

■ We now turn to the alleged misconduct of plaintiff's counsel. It is first contended that counsel went outside the evidence when he said to the jury that plaintiff was knocked to the sidewalk. The evidence lends itself to the commonsense inference that the falling glass either knocked her down or rendered her unconscious so that she fell to the sidewalk. The jury heard the entire evidence and no prejudice could have occurred. It is next alleged that counsel's jury argument carried the implication that defendants tried to withhold pertinent evidence from the jury. Of course the resort to an innuendo of this kind is unjustified. We have the further assertion that counsel made improper comment with respect to the hospital records as indicating a possible skull fracture. None of these instances of misconduct appear to be so flagrant or prejudicial as to require a reversal. A new trial for prejudicial argument is granted only to prevent a miscarriage of justice, and whether a new trial is to be granted rests in the discretion of the trial court whose decision thereon will be reversed on appeal only for a clear abuse of dis-

---

[3]See, 19 Minn. L. Rev. 708. As to use of pleadings for impeachment purposes, see Carlson v. Fredsall, 228 Minn. 461, 37 N. W. (2d) 744.

[4]Ferraro v. Taylor, 197 Minn. 5, 265 N. W. 829, is easily distinguishable on its facts since counsel there testified as a witness and interpreted evidence in the light of his own experience and made a flagrant appeal to passion and prejudice.

cretion.[5] We find no abuse of that discretion. What was said in Hardy v. Anderson, 241 Minn. 478, 483, 63 N. W. (2d) 814, 818, is applicable here:

"* * * In arguing to the jury it is elementary that counsel is entitled to present his client's case forcefully and fairly, and his efforts are not to be crippled by compelling him to run a course of technical hazards either when he draws factual inferences from conflicting evidence or when he applies the law to the facts as he, as an advocate, sees them. Although he may not strike foul blows, he may strike hard blows which are not always technically correct. Except in extreme cases, errors and omissions of counsel in discussing the applicable law or in the drawing of factual inferences are cured when the jurors are expressly instructed—as they were here—that they are the exclusive judges of the facts and that their recollection of the facts must prevail over any contrary contentions of counsel and further that they must take and apply the law as given by the court and not as presented by counsel."

We have the further assertion that prejudicial misconduct occurred when plaintiff's counsel before the jury argued damages according to a mathematical formula which purports to evaluate damages for loss of earnings and pain and suffering on a per diem or per hour basis. Appellants predicate error apparently under our holdings in Ahlstrom v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 1, 68 N. W. (2d) 873, and Hallada v. G. N. Ry. 244 Minn. 81, 69 N. W. (2d) 673. In neither the Ahlstrom nor the Hallada case did we hold that the mathematical formula may not be used for purely illustrative purposes. In the Hallada case we merely held that the segmentation process of breaking the damage picture into fragments and then applying to each fragment a mathematical formula whereby damages are calculated at a fixed rate per day for the entire period of the injured person's life expectancy, though illumi-

---

[5]Beebe v. Kleidon, 242 Minn. 521, 65 N. W. (2d) 614; Hardy v. Anderson, 241 Minn. 478, 63 N. W. (2d) 814; Willmar Gas Co. Inc. v. Duininck, 239 Minn. 173, 58 N. W. (2d) 197; Randall v. Goodrich-Gamble Co. 244 Minn. 401, 70 N. W. (2d) 261; Hallada v. G. N. Ry. 244 Minn. 81, 69 N. W. (2d) 673.

nating, may be misleading and therefore may not be used as a yardstick for determining the reasonableness of the amount awarded for damages. This rule does not bar the use of the mathematical formula for purely illustrative purposes.

 Appellants propounded a hypothetical question to their expert witness, an engineer, to elicit his opinion on the cause of the breaking of the light globe and canopy. The question was excluded on the ground that it invaded the province of the jury. Expert opinion should be received only when the subject matter is of such a character or complexity that it cannot reasonably be assumed to be within the ordinary experience or knowledge of men and then only if it will reasonably aid the trier of fact to determine the truth. If the jury is as competent to determine the fact issue as the expert, his opinion should not be admitted.[6] It is only reasonable to assume that the expert's opinion here as to the cause of the breaking of the light globe and canopy would have been helpful to the jury. Clearly the opinions of an expert are not inadmissible merely because they bear directly on the issue to be determined by the jury.[7] The error was not prejudicial, however, since the expert was permitted to testify as to the properties of the cast iron of which the light pole was made; to give his opinion on the amount of force necessary to break the glassware on top of the pole; and to state the amount of force which could be transmitted to the pole by striking the "No parking" sign attached to it. He was also permitted to propound his own theory of the cause of the glass breaking—a theory which would permit the inference that the accident was unconnected with the movements of a bus. Since the expert was permitted to put before the jury the information on which he would have based his opinion, we cannot say under the circumstances here existing that the jury could not from such information by inference reasonably draw the conclusion or opinion which would have been elicited by an answer to the hypothetical question. The error therefore was not prejudicial.

[6]Beckman v. Schroeder, 224 Minn. 370, 28 N. W. (2d) 629; Woyak v. Konieske, 237 Minn. 213, 54 N. W. (2d) 649, 33 A. L. R. (2d) 1241.

[7]Woyak v. Konieske, *supra;* Berg v. Ullevig, 244 Minn. 390, 70 N. W. (2d) 133.

■ On cross-examination of the defendant power company's lighting engineer, Harold G. Conant, appellants sought to elicit his opinion based on an assumption of facts not in evidence. The court rejected this testimony. No prejudicial error resulted. Although counsel may be permitted on cross-examination, for the purpose of testing the skill and accuracy of an expert witness, to ask hypothetical questions pertinent to the inquiry by assuming facts having no foundation in the evidence, the range of such cross-examination must rest largely in the discretion of the trial court. Bonderson v. Hovde, 150 Minn. 175, 184 N. W. 853. Generally a wide range of inquiry should be allowed on cross-examination but the manner and scope thereof rest largely within the discretion of the trial court and no reversible error occurs except in cases of a clear abuse of that discretion. Mattfeld v. Nester, 226 Minn. 106, 32 N. W. (2d) 291, 3 A. L. R. (2d) 909. The trial court has the duty to prevent the jury from having to consider extraneous and irrelevant evidence that might be injected on cross-examination. See, Hockaday v. Red Line, Inc. 85 App. D. C. 1, 174 F. (2d) 154, 9 A. L. R. (2d) 601. We here have no reversible error.

■ The trial court did not err in limiting the cross-examination of Walter E. Fisher, defendant power company's repairman or troubleshooter. On cross-examination he was asked to assume certain facts and to give his opinion as an expert. No attempt had been made to qualify this witness as an expert on direct examination. A witness who is not an expert and who has not attempted on direct examination to express his opinion should not be required to give one on cross-examination.[8] We have not overlooked, however, that on direct examination the witness was asked whether the globe would fall to the ground if the bolts were screwed tight enough to break the collar. In ruling upon the cross-examination of the witness as an expert, the trial court stated that it did not recall that any opinion questions had been asked on direct examination and said that, if any such questions had been asked, appellants were entitled to obtain his opinion on other matters. Appellants' counsel then said: "If Mr. Weyl [counsel for the power company] is object-

[8]State v. Kasper, 140 Minn. 259, 167 N. W. 1035.

ing on that basis, I assume he remembers, and I have nothing further of this witness." Since appellants chose to rely on the recollection of opposing counsel and on the recollection of the court, he is now in no position to complain.

The verdict against the defendant bus company and its driver on the issue of negligence is sustained by the evidence. As usual the evidence is conflicting. Taking it, as we must, in the light most favorable to the verdict, the jury could reasonably find that the 19,950-pound bus, loaded in addition with the weight of from 50 to 55 passengers, struck the post with such an impact that the jar to the cast iron pole was sufficient to strain and break the light globe and canopy mounted on the crossarm near its top. One of the bus passengers testified that the bus "sideswiped" something with a noise loud enough to be heard above the traffic and other street noises. A prospective passenger standing on the sidewalk heard the impact just before the broken glass fell down. Plaintiff said that she noticed the bus hit the pole just before the glass fell on her head. No purpose will be served in reviewing the evidence in detail since the jury could reasonably conclude from the conflicting evidence that the contact between the bus and the pole was not of a minor nature but of sufficient violence to cause the glass globe and canopy to break. In other words, the jury could infer that the contact of the bus with the light pole was not confined to the bus mirror or to the "No parking" sign affixed on the pole.

The verdict of $26,500 is liberal but we cannot say that it is either excessive or indicative of passion and prejudice. The jury could find from the medical testimony that the pains in the cervical regions of her neck and a condition of dizziness are permanent and that she will suffer from the injury as long as she lives. She was hospitalized for 37 days following the accident. One of the physicians estimated that she has at least a 50-percent permanent disability. Since plaintiff has a life expectancy of 11.67 years, it can hardly be said that there is no reasonable basis in the evidence for the amount of the verdict.

The order of the trial court is affirmed.

Affirmed.