# HERMAN FLOEN v. JOHN SUND.

96 N. W. (2d) 563.

April 17, 1959—No. 37,596.

212

*Joseph N. Moonan* and *Moonan, Moonan & Senn,* for appellant.
*F. J. O'Brien,* for respondent.

DELL, CHIEF JUSTICE.

This is an action for personal injuries and property damage arising out of an automobile accident. Plaintiff had a verdict of $11,767.50 and judgment was entered for $12,793.76, which included interest, costs, and disbursements. Defendant appeals from the judgment.

The accident occurred about 7:30 a. m., March 7, 1956, on U. S. Highway 52 just south of an intersection known as Douglas Corners which is approximately 7 miles north of Rochester. At this point Highway 52 is a straight, two-lane highway which runs in a general north-south direction and has a slight downgrade towards Rochester. There were patches of ice on the pavement, and snow covered the shoulders. Visibility varied from 40 to 250 feet because gusts of wind blew snow across the highway.

Plaintiff was on his way to work in Rochester driving south in the west lane about 35 to 40 miles an hour. There was a car behind him and one in front traveling at approximately the same rate of speed. Traffic on the road was light and the drivers and passengers of all three cars testified that they could not recall any other vehicle passing them at or near the scene of the accident. Plaintiff saw defendant's vehicle proceeding north when they were 100 to 150 feet apart. The car was being driven partly in the east lane and partly on the east shoulder of the highway. Suddenly it skidded and crossed the centerline into the west lane at right angles to plaintiff's car. Plaintiff applied his brakes but the

collision could not be avoided. When the cars came to rest, defendant's was facing almost due west, its front wheels on the west shoulder and its rear end across the centerline. Plaintiff's vehicle was facing south and slightly west with its right front wheel on the west shoulder.

Plaintiff sustained numerous injuries, among them bruises and cuts on his chin and the bridge of his nose which required sutures, a darkening around his eyes, subcutaneous emphysema (air pockets under the skin) in the neck and chest region, and several fractured ribs. He remained in the hospital for 10 days and was absent from work for nearly a month. He still has scars on his face and the darkening around his eyes and complains of difficulty in breathing; frequent headaches; continued pains in his neck, arms, and chest; and a weakening of the grip in his left hand. Plaintiff's physician diagnosed the major part of his injuries as cervical radiculitis, "[t]hat is injury to the nerves as they come out of the cervical spine, * * * [which] nerves in general supply the arm," and concluded that this condition was permanent and the result of the automobile accident. Plaintiff no longer is able to do the heavy carpentry to which he was accustomed and has been transferred to light work although his pay scale has not declined. However, he is now required to be absent occasionally on account of the pain and the stiffness which the work causes. He has also been required to give up a job which he had on Saturdays and can no longer do odd jobs evenings in his home workshop. These injuries, his loss of work, his hospital bills, and his damaged automobile form the basis of his claim.

Defendant in his brief presents 39 assignments of error on this appeal. Generally, however, they fall within five main categories: (1) That the evidence was not sufficient to prove that defendant was negligent; (2) that the evidence was not sufficient to show that plaintiff's present physical condition is as serious as is claimed or was the proximate result of the collision; (3) that the trial court erred in admitting one of plaintiff's exhibits in evidence; (4) that the trial court erred in failing to give defendant's requested instructions as to his theory of the case; and (5) that the verdict was excessive and rendered under the influence of passion and prejudice aroused by the misconduct of plaintiff's counsel.

■ The evidence must, of course, be viewed in the light most

favorable to the verdict.[1] Upon the record as a whole the testimony of the eyewitnesses corroborates plaintiff's version of the accident in nearly every detail. The only contradictory evidence was defendant's testimony. This was his story:

"* * * I was going 30 to 40 miles an hour down the highway.

\* \* \* \* \*

"Well, while traveling north on the highway * * * I suddenly saw two headlights bearing down on me in the east lane going south, and the cars [sic] was coming on me very fast, so I turned the wheel very sharply off of the highway, and I got off of the highway just as the car went by.

\* \* \* \* \*

"* * * I skidded from two to three hundred feet [along the shoulder], and from the time that I left the shoulder to the point of the accident * * * was 112 feet * * *."

Even if this testimony had been uncontradicted, the jury would not have been required to accept it if it was improbable or if surrounding facts and circumstances furnished reasonable grounds for doubting its credibility.[2] In this case, however, in addition to testimony that traffic was light and that no car had passed plaintiff or the cars in front of and behind him, there was testimony by the state highway patrol officer, who investigated the accident, that defendant had told him in the hospital shortly after the accident that he had been going 60 miles an hour. We conclude that there was sufficient evidence from which the jury could find that defendant was negligent.

■    Defendant contends, however, that the trial court erred in failing to instruct the jury specifically as to defendant's theory of the case. The requested instructions were all premised upon the defendant's testimony that either the car which he claimed forced him off the road or the prevailing weather conditions created a situation in which this accident

---

[1]Swanson v. Minneapolis St. Ry. Co. 252 Minn. 484, 90 N. W. (2d) 514; Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213.

[2]Blazek v. North American Life & Cas. Co. 251 Minn. 130, 87 N. W. (2d) 36; Olsson v. Midland Ins. Co. 138 Minn. 424, 427, 165 N. W. 474, 475.

was unavoidable and thus not the result of negligence. We cannot agree. In view of the doubt cast upon defendant's testimony by the testimony of the other witnesses and considering the evasiveness on his part, which seems apparent from the record here, that theory is at best tenuous. Nevertheless, we are of the opinion that the trial court in its charge adequately covered defendant's position. At the outset it stated:

"The defendant, John Sund, denies that negligence on his part was the cause of the accident. He claims that a motorist forced him to suddenly drive onto the shoulder, that he thereby lost control of his car, and finally collided with the plaintiff."

The court then explained the care required of motorists and informed the jury that failure to use such care constitutes negligence. Somewhat later the court again returned to defendant's theory of the case and stated:

"* * * One who faces a sudden peril through no fault of his own is not negligent if, in his attempt to escape, he does not choose the best or the safest way, unless the way chosen was so hazardous that an ordinary prudent person would not have chosen it under similar circumstances."

We are not unmindful of the rule that a party is entitled to a specific instruction based upon his theory of the case.[3] However that rule is not without its limitations. First, there must be evidence to support it.[4] Second, there is no requirement that those instructions which are prepared by counsel must be given in their entirety, and, when they are not completely proper, it is the duty of the court to correct them.[5] Third, there is no reason to give one theory a disproportionate emphasis. Accordingly we have held that it is preferable to "charge the jury in an orderly, systematic, and consecutive manner in a general charge upon

---

[3]Luther v. Standard Conveyor Co. 252 Minn. 135, 89 N. W. (2d) 179; Hagen v. Snow, 244 Minn. 101, 69 N. W. (2d) 100; Chicago & N. W. Ry. Co. v. Green (8 Cir.) 164 F. (2d) 55, 61.

[4]Luther v. Standard Conveyor Co. 252 Minn. 135, 89 N. W. (2d) 179; Boutang v. Twin City Motor Bus Co. 248 Minn. 240, 246, 80 N. W. (2d) 30, 37; Hagen v. Snow, 244 Minn. 101, 69 N. W. (2d) 100.

[5]Luther v. Standard Conveyor Co. 252 Minn. 135, 89 N. W. (2d) 179; Hagen v. Snow, 244 Minn. 101, 69 N. W. (2d) 100.

the whole law of the case" after considering all the requested instructions.[6]

In the instant case we think the trial court's instructions were proper. The evidence supporting defendant's theory was slight and uncorroborated. Five instructions were requested, all of which were highly favorable to defendant. To have given all of them would have over-emphasized his theory beyond all reasonable bounds. The trial court incorporated their substance in the charge and in so doing adequately instructed the jury of defendant's position. There was no error.

■ The next question concerns the sufficiency of the evidence as to plaintiff's injuries. Defendant contends that plaintiff's counsel attempted to create the impression that among the factors which caused plaintiff's disability was a slipped disc which had been sustained as a result of the accident. Plaintiff's counsel, however, points out that the question of the slipped disc was raised only to show that plaintiff was given a thorough physical examination in which all possible causes of his disability were considered, including the slipped disc, and that the expert expressly ruled out the latter on the ground that "We felt this was cervical radiculitis." We think that the record sustains plaintiff's position, especially in view of the burden of proof he was required to meet.[7]

When defendant presented his requested instructions to the court, the court noted thereon that if plaintiff's counsel argued that plaintiff had sustained a slipped disc, the court would instruct the jury that there was no evidence to that effect. However the instruction was never given to the jury because plaintiff in his closing argument never raised the issue. It is true that he did read a portion of the doctor's testimony to the jury to refresh their recollections but the portion read clearly indicates that a slipped disc is not involved here. In no way could the jury have been misled; in fact, had the court given the requested instruction it might well have confused the jury concerning what was to be considered in determining the damages actually sustained.

---

[6]Swanson v. LaFontaine, 238 Minn. 460, 469, 57 N. W. (2d) 262, 268; see, Markle v. Haase, 245 Minn. 520, 73 N. W. (2d) 362; and see, Bylund v. Carroll, 203 Minn. 484, 281 N. W. 873.

[7]See, Nelson v. Ackermann, 249 Minn. 582, 83 N. W. (2d) 500.

■ Defendant assigns as error the admission in evidence of plaintiff's exhibit 11, a colored picture taken while plaintiff was in the hospital. He is shown lying on a bed with a scar over his forehead. Defendant claims that it was prejudicial and taken solely for the purpose of a lawsuit. It may be that the reason for taking the picture was to retain some evidence of plaintiff's injuries for purposes of this action. But that is not improper. Colored photographs are admissible in evidence in personal injury actions to indicate the nature and extent of the injuries sustained so long as they accurately portray and do not exaggerate the injuries.[8] In the instant case the doctor testified that the picture was an accurate representation of the plaintiff's injuries while plaintiff was in the hospital, although he was not present at the time it was taken. Nor was there any evidence of any special preparation for taking the picture beforehand. The picture had previously been shown to the court in chambers so that it was satisfied that it was not prejudicial; we have seen the picture and reach the same conclusion.

■ The final question concerns the amount of the verdict which defendant contends was excessive due to passion and prejudice engendered by the conduct of plaintiff's counsel. Four instances of misconduct are claimed, all occurring during the argument to the jury. Only two instances merit comment. One was the quotation by counsel from the transcript of the doctor's testimony; the other was the following statement:

"* * * But, of course, I have tried cases long enough to know that nearly always you run into a phantom car. The man goes off the road at night, and you say 'What happened?' 'Oh,' he says 'there was a car came along with bright lights glaring, so I took to the ditch.' Very seldom does a man come in and say, 'Yes, I think I was careless, I was at fault.'

"So I mean, this phantom car is not a new—it is not a new thing for an attorney to represent folks who are injured, to run into."

Counsel for plaintiff claims that the transcript was read on oral

---

[8]Knox v. City of Granite Falls, 245 Minn. 11, 72 N. W. (2d) 67, 53 A. L. R. (2d) 1091; Moeller v. Hauser, 237 Minn. 368, 54 N. W. (2d) 639, 57 A. L. R. (2d) 364.

argument merely to aid the jury in keeping the testimony clear. The quotation was read accurately with no omissions. All this testimony had been heard previously by the jury and was properly before them. It was within the trial court's discretion to permit counsel to read from the transcript,[9] and we cannot say that there was an abuse of discretion.

The reference to a "phantom car" was likewise not prejudicial. Counsel's right to comment on properly received evidence is unquestioned,[10] and surely in a case such as this where there was grave doubt about defendant's testimony, plaintiff's right should not have been abridged. However the portion of the argument wherein counsel referred to the "phantom car" as "not a new thing for an attorney" and as something "that nearly always you run into" should not have been made since this was beyond the record. But it is only in cases of the most flagrant violations that a new trial will be granted under these circumstances.[11] Such does not appear to be the case here and we will not penalize plaintiff for the misstatements of his counsel.[12]

Nor do we think that the amount of the verdict is so excessive that it requires us to grant a new trial. The total verdict was $11,767.50. Of this amount $3,372.55 was for special damages. This included damages of $920 to the automobile and some equipment in it, $1,691 for loss of wages, and $761.55 for expenses in connection with his recovery. The remainder, approximately $8,400, was for general damages. It is unnecessary to set forth all of the injuries which plaintiff sustained in the accident. It appears, however, that several ribs were broken and that there was a good deal of internal bleeding. His face was cut, bruised, swollen, and badly discolored. At the time of the trial there was still a darkened area around his eyes. His facial scars are somewhat disfiguring and give him some trouble when he shaves. He complains of

[9]Westling v. Holm, 239 Minn. 191, 58 N. W. (2d) 252; Aasen v. Aasen, 228 Minn. 1, 36 N. W. (2d) 27.

[10]Boutang v. Twin City Motor Bus Co. 248 Minn. 240, 80 N. W. (2d) 30; Rappaport v. Boyer & Gilfillan Motor Co. 239 Minn. 477, 59 N. W. (2d) 302.

[11]Nelson v. Twin City Motor Bus Co. 239 Minn. 276, 58 N. W. (2d) 561; Harris v. Breezy Point Lodge, Inc. 238 Minn. 322, 56 N. W. (2d) 655.

[12]See, Clark v. Rowatt, 349 Ill. App. 396, 110 N. E. (2d) 663; and see, Mendelson v. Peton, 135 Cal. App. (2d) 390, 287 P. (2d) 378.

recurrent headaches and his eyes tire easily. He no longer has a normal grip in his left hand and cannot do heavy work. He has been forced to give up a job which he had on Saturdays. There was testimony that these injuries are permanent. Considering that plaintiff's life expectancy was 23.08 years,[13] we cannot say that the verdict was excessive as a matter of law.[14]

We have not overlooked the other arguments urged by defendant as grounds for reversal. We are satisfied that they are not such as to require it nor are they sufficiently important to justify comment.

Affirmed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.

---

[13]The life expectancy was determined from the American Experience Mortality Table, and while the jury was not required to accept this figure merely because of the table (Tollefson v. Ehlers, 252 Minn. 370, 90 N. W. [2d] 205; Thoirs v. Pounsford, 210 Minn. 462, 299 N. W. 16), certainly it was not required to totally disregard it.

[14]See Boutang v. Twin City Motor Bus Co. 248 Minn. 240, 80 N. W. (2d) 30, where a plaintiff with a life expectancy of 11.67 years, who had incurred injuries similar to plaintiff's herein, recovered a verdict of $26,500, which we upheld. In this case a plaintiff with nearly double the life expectancy has recovered less than half that amount. While it is impossible to compare one verdict to another with a high degree of accuracy, we conclude that the Boutang case is sufficient authority to sustain the verdict here.