Blair H. RAYCRAFT, Appellee,

v.

**DULUTH, MISSABE AND IRON RANGE RAILWAY COMPANY, a corporation, Appellant.**

No. 72–1049.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1972.

Decided Jan. 16, 1973.

William O'Brien, Duluth, Minn., for appellant.

Mary Jeanne Coyne, Minneapolis, Minn., for appellee.

Before MATTHES, Chief Judge, ME-HAFFY, Circuit Judge, and VAN PELT, Senior District Judge.*

VAN PELT, Senior District Judge.

This is an action for personal injury brought under the Federal Employers' Liability Act. Plaintiff, Raycraft, alleged that he was riding in the caboose of a train as a conductor and that as a result of the sudden stop of the train he was thrown to the floor and injured when another employee fell on his back. At the trial the defendant railroad (DM & I) admitted its negligence in the emergency stop. The factual issues were, therefore, the physical cause of plaintiff's back difficulties and the amount of damages. The case was submitted to a jury which returned a verdict of $112,836.85. Defendant's motion for a new trial was denied. Defendant brings this appeal.[1]

Resolution of the factual issues demands a review of the history of plaintiff's back difficulties. Prior to 1942 plaintiff had worked for DM & I as a brakeman. In 1942 while undergoing basic training in the Army he suffered a back injury. He received treatments for this injury, and served out his enlistment in the train service of the Army. He returned to DM & I employment working from 1945 to 1955. Twice he sustained back injuries during this time. In 1955 plaintiff bid for and re-ceived a yardmaster's job. He worked as a yardmaster until 1966. In 1960 a laminectomy was performed on his back by a Doctor Atmore; a second laminectomy was performed by the same doctor in 1963. During this time he had on several occasions applied for higher disability ratings from the Veterans Administration (VA); he was also examined several times during this period by the VA. Ultimately he received a 70% disability rating, of which 50% was attributable to his back condition.

On June 3, 1966, plaintiff requested an examination from DM & I in order to again qualify for train service. This examination was given on August 11, 1966, at which time he told the company physician, Doctor Meyer, that he had no back trouble. The doctor found him fit for train service. He worked in the train service from 1966 until the 1969 accident. On July 16, 1966, plaintiff was recalled for physical examination by the VA in order to review his disability rating. He indicated to the VA that he was having intense back problems and was thereby unable to work to his fullest capacity with DM & I (this examination led to the above mentioned 50% disability rating for his back condition). Doctor Meyer was aware of the two prior laminectomies, and, in fact, had declared Raycraft unfit for train service in 1963, but he was unaware of the results of the VA examination or of the claims Raycraft had made to the VA about his back.

For the next three years plaintiff worked in the train service. During this time he was periodically reexamined by the railroad and found fit. On September 20, 1969, the accident in question took place. He had back problems after the accident and on March 18, 1970, Doctor Lerner, an orthopedic surgeon, and Doctor Titrud, a neurosurgeon, per-

---

* Senior District Judge for the District of Nebraska sitting by designation.

1. From the record in this case it appears that counsel for appellant has styled his appeal as one from the order of the lower court denying the motion for new trial. It is the rule in this Circuit that such orders are not appealable. Metal Fabricators v. Granite City Steel Co., 357 F.2d 175 (8th Cir. 1966). Despite this error the Court will proceed to the merits of the case, viewing appellant's appeal as one from the judgment below.

formed a laminectomy and posterior fusion. Plaintiff has suffered pain and loss of back function since then.

At proceedings in chambers at the opening of trial, the railroad made a specific offer of three sets of documents from the VA file—the Reports of Medical Examination for Disability Evaluation, made July 16, 1966, August 12, 1963, and November 26, 1962, together with orthopedic and neurological examination reports bearing like dates and the accompanying rating decisions. The court ruled that the portion of the Report of Medical Examination for Disability Evaluation containing the occupational and medical history prepared and signed by the appellee were tantamount to admissions and would be admitted as substantive evidence and not merely for impeachment purposes. The court ruled that the examination reports and the disability ratings were inadmissible, but specifically authorized the railroad to ask the appellee whether or not the VA had given him a 50% disability rating with respect to his back from the year 1966 on. The appellee, in an answer to an interrogatory, stated that he had never applied for or received disability payments from the VA.

At trial both Doctor Lerner and Doctor Titrud testified that there was a causal relationship between the accident and plaintiff's back condition; Doctor Titrud testified that he had sustained both a new injury and an aggravation of an old back injury. Doctor Meyer testified that the accident may have aggravated the back injury, but indicated that he believed the surgery was based primarily on the failure of the previous laminectomies and that plaintiff was a candidate for a fusion as far back as 1966. The orthopedic and neurological examination reports in the VA file were entitled to be considered, according to defendant's offer of proof, to support the testimony of Doctor Meyer and to prove the extent of plaintiff's back difficulties prior to the time of the accident.

On appeal appellant urges reversible error by the trial court (1) in excluding the offered documents from the VA file, and (2) in refusing to give a requested instruction that damage awards in personal injury actions are not subject to federal income taxation.

## I. *Admissibility of Veterans Administration Records*

■■ The appellant argues that the entire VA file should have been admitted pursuant to the business records exception to the hearsay rule, or, in the alternative, for the purpose of impeaching plaintiff's response to interrogatories denying that he had ever made a claim to VA by reason of a disability of his back.

The latter argument is easily disposed of. Prior to the trial the lower court ruled that evidence regarding VA benefits was inadmissible. During the trial, however, counsel for appellant asked plaintiff a question incorporating the interrogatory in its entirety, to which plaintiff answered that he had made a claim. This answer could be used to impeach plaintiff and would have provided defendant's counsel with a basis for arguing that the plaintiff's veracity was suspect. The VA records would not have added more than his answer on cross-examination.

■ The lower court felt obliged to make certain that the jury was not informed of VA disability benefits. In a similar situation the Supreme Court, in the case of Eichel v. New York Central R.R., 375 U.S. 253, 84 S.Ct. 316, 11 L. Ed.2d 307 (1963), held that the trial court had properly excluded evidence of compensation benefits for the purpose of impeachment, on the authority of the collateral source rule. *See also* Page v. St. Louis Southwestern Ry., 349 F.2d 820 (5th Cir. 1965). The trial court was correct that evidence of the VA benefits was inadmissible.

The other claimed error requires more extensive consideration. Rule 43(a), Fed.R.Civ.P., necessitates an analysis of

both the Minnesota statute,[2] and the Federal statute,[3] relating to business records.

■■ The records in question here are diagnostic reports made by VA physicians for purposes of an administrative determination of plaintiff's disability claims. It is apparent that both Minnesota and federal courts have interpreted their respective statutes to allow admission of diagnostic reports under the business records act exception to the hearsay rule when such reports were made in the course of treatment. In *Boutang v. Twin City Motor Bus Co.*, 248 Minn. 240, 80 N.W.2d 30 (1957), the Minnesota Supreme Court stated:

"[The] limitation upon admissibility does not apply to those non-privileged portions of the [hospital] record which relate solely to a medical history of the patient and are *pertinent to the medical and surgical aspects of the case* nor to those pathological observations thereon—even though based in part on subjective as well as on objective symptoms—which are *germane to a proper diagnosis and treatment of the patient's injuries.*" *Id.* at . . ., 80 N.W.2d at 37 (Emphasis added).

This court in *Picker X-ray Corp. v. Frerker*, 405 F.2d 916 (8th Cir. 1969), held it was error to admit into evidence an incident report prepared by the business manager of a hospital even though it was the regular practice of the hospital to prepare such reports:

"Here we have records which are hospital records and which qualify as business records but have no relationship to future treatment of the particular patient, Mrs. Frerker. True, as a result of incident reports medical procedures may be changed and future patients may receive different treatment. However, Mrs. Frerker's treatment in no way depended on either exhibit. She had left the hospital, probably, before the business manager heard of the incident. These records thus do not have the guarantee, if ever it is such, of credibility afforded by reliance thereon by doctors and nurses in matters affecting the life and death of the patient." *Id.* at 922–923.

The basis for admissibility is, as noted in *Frerker*,[4] that such records would have the "guarantee . . . of credibility afforded by reliance thereon by doctors and nurses in matters affecting the life and death of the patient." The analysis here would be similar to that in *Frerker*, that is, the records apparently satisfy the requirements of the business records exception but lack the indicia of trustworthiness usually demanded of the

---

2. "A record of an act, condition, or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission." Minn.Stat.Ann. § 600.02 (1947).

3. "[A]ny writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event if made in the regular course of any busi-

ness, and if it was in the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event within a reasonable time thereafter.

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility." 28 U.S.C. § 1732 (1970).

4. Although the court in *Frerker* noted the self-serving nature of the incident report, this was not necessary to the holding that exclusion was necessary but rather merely an additional factor supporting the conclusion that the report lacked the indicia of trustworthiness.

types of records sought to be introduced.[5]

One disquieting aspect of the instant case is whether exclusion here is not the result of an unduly restrictive view of the business records exception to the hearsay rule. It is the "business" of the VA to make disability rating decisions and these reports were made, and signed, by physicians. *Cf.* Rivers v. Union Carbide Corp., 426 F.2d 633 (3d Cir. 1970); White v. Zutell, 263 F.2d 613 (2d Cir. 1959). These factors, however, are not sufficiently pressing to support admission in the instant case. Caution in regard to diagnostic reports arises from the very nature of the reports. In Woods v. National Life & Accident Insurance Co., 380 F.2d 843, 846 n. 8 (3d Cir. 1967), the court observed: "The only real difference between a medical diagnostic report and other varieties of business entries is that in certain cases its complexity or subjective nature may in fairness require that its author be available in court for examination to explore the basis and content of his conclusions."[6] The diagnostic reports in the instant case amount to findings concerning the physical condition of plaintiff, especially in regard to his back, prior to the accident, findings which could only be tested by cross-examination. Therefore, the absence of the normally required indicia of trustworthiness could be considered significant by the trial court.

The deleterious effect of admission on the fact-finding process may outweigh any benefit to be derived from admission. In Gilroy v. Erie Lackawanna R. R., 279 F.Supp. 139 (S.D.N.Y. 1968), a FELA action, during the trial plaintiff's counsel sought to introduce medical records and findings of the Railroad Retirement Board dealing with plaintiff's disability. The court ruled that the records and findings should be excluded:

"There can be no question but that, at least in the broad sense, the exhibit consists of records 'made in the regular course of business' of the Board. Nevertheless, and notwithstanding the existence of the federal business records rule . . . it does not necessarily follow that admission of Exhibit 54 was required at the trial.

. . .

"In my view, the serious vices of this exhibit as evidence in this trial would have been several. First, the exhibit constitutes a finding by another agency or tribunal upon a critical issue which was to have been resolved by the jury. Although the analogy may not be perfect, to have permitted the jury in this case to see the findings of the Board on the issue of [plaintiff's] disability would have been akin to a trial judge in a criminal case informing the jury of his findings on the validity of a confession of guilt, which issue under current procedures is then put to that jury for its decision . . . . Second, it is beyond dispute that Exhibit 54 amounts to an extra-judicial finding which could not have been tested by cross-examination at this trial." *Id.* at 142.

It is axiomatic that the trial judge has broad discretion in regard to ques-

---

5. A related argument advanced by counsel for the appellee is that these medical records were not necessary to the systematic conduct of the VA's *hospital* business, and thus were not made "in the regular course" of the business within the meaning of the statute. This argument has its origin in the case of Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L. Ed. 645 (1943), and is not without merit. *Cf.* Hussein v. Isthmian Lines, Inc., 405 F.2d 946 (5th Cir. 1968). The only difficulty with the argument is the fairly consistent interpretation of *Palmer* as dealing with the self-serving nature of proffered evidence. C. McCormick, Evidence § 308 (2d ed. 1972).

6. In certain cases it might be permissible to exclude a hospital record containing a diagnostic report made by a *treating* physician when the diagnosis is peculiarly complex or speculative. *Cf.* C. McCormick, Evidence § 314 (2d ed. 1972).

tions of the admissibility of evidence, and here it would be difficult to conclude that the trial court's discretion was improperly exercised.[7]

The reports were clearly hearsay, and hence inadmissible unless they fall within a recognized exception to the hearsay rule.

The conclusion which we have reached is supported at least indirectly by the proposed rules of evidence for the federal courts,[8] which now have the approval of the Judicial Conference of the United States. The hearsay rule in setting forth hearsay exceptions, none of which are identical to those offered in this case, does, however, include a limitation on statements of a party, which has significance here.

"4. *Statements for Purposes of Medical Diagnosis or Treatment.* Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Rule 803(4) Proposed Rules of Evidence.

The reporter's note to this exception refers to this same limitation, namely, "for purposes of diagnosis or treatment." It cites both the New Jersey Evidence Rules, which contains the same limitation and McCormick on Evidence. McCormick seems to recognize with respect to statements the importance of the purpose of treatment. The VA reports to which the assigned error relates clearly were not made for the purpose of diagnosis or treatment.

We conclude that it was not error under the circumstances of this case for the trial judge to exclude these reports which determined the disability ratings. We again emphasize that there were admitted into evidence plaintiff's medical statements taken from the VA files concerning his physical condition, the records regarding his prior hospitalization, and the fact of the fifty percent disability rating, together with his admission in substance that he had lied to the company doctors when he applied for reemployment as a railroad worker. If there was error in excluding the offered documents, and we conclude there was not, in any event it did not affect the substantial rights of the plaintiff (See Rule 61, Federal Rules of Civil Procedure).

7. Another aspect of the instant case is whether the VA file should have been admitted on the ground that it constitutes an official record. 28 U.S.C. § 1733 (1970); Minn.Stat.Ann. § 600.13 (1947). There are decisions which arguably support admission of the records under consideration here on this basis. *See, e. g.,* Woods v. Nat. Life & Acc. Ins. Co., 380 F.2d 843 (3d Cir. 1967); Thatenhorst v. United States, 119 F.2d 567 (10th Cir. 1941); Young v. Terminal R. R. Ass'n, 70 F.Supp. 106 (E.D.Mo. 1947). However, this matter was not argued before this Court and perhaps for that reason should not be considered here. In any event, the trial court felt that the official records exception was not sufficiently broad to encompass diagnostic records. Suffice it to say that whether the trial court was technically correct is inconsequential because its broad discretion in evidentiary matters applies here also. As the court stated in Franklin v. Skelly Oil Co., 141 F.2d 568, 572 (10th

Cir. 1944): "[E]xpressions of opinion and conclusions on causes and effects based upon factual findings are not always admissible as public records, especially when it is shown . . . that . . . the denial of the right of cross-examination would result in the perversion of the rule of trustworthiness and reliability . . . . The search is for truth and the trial court is the first and best judge of whether tendered evidence meets that standard of trustworthiness and reliability which will entitle it to stand as evidence of an issuable fact, absent the test of cross-examination."

8. The Judicial Conference of the United States has now approved these rules and delivered them to the Supreme Court of the United States. The Supreme Court with only one Justice dissenting has approved them and fixed an effective date of July 1, 1973, and the rules will be sent to the Congress when it convenes early in 1973.

## II. *Income Tax Instruction*

Appellant argues that the trial court erred in refusing to give a requested instruction that compensatory damages awarded in personal injury actions are not subject to federal income taxation. Appellant presses upon this Court the reasoning in Domeracki v. Humble Oil & Refining Co., 443 F.2d 1245, 1251 (3d Cir. 1971), in which the Court prospectively adopted the rule that:

> "[T]he trial [court] . . . must . . . upon request by counsel, instruct the jury that any award will not be subject to federal income taxes and that the jury should not, therefore, add or subtract taxes in fixing the amount of any award."

The subject is not without controversy. *See* Annot., 63 A.L.R.2d 1393 (1959). In recent cases involving such an instruction, the Second, Fifth, and Sixth Circuits have expressly refused to approve its giving. Cunningham v. Bay Drilling Co., 421 F.2d 1398 (5th Cir. 1970); Payne v. Baltimore Ohio R.R., 309 F.2d 546 (6th Cir. 1962); McWeeney v. New York, New Haven & Hartford R.R., 282 F.2d 34 (2d Cir.), cert. denied, 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93 (1960). The Eighth Circuit has expressed no opinion on the subject.[9]

In view of the state of the law and the record in the instant case, this Court will not pass on the issue at the present time. Even if this panel were to adopt the instruction, this panel would do so only prospectively.[10] Therefore, such a holding is not necessary for resolution of the instant case. The question is more properly left open for future consideration and perhaps for *en banc* determination by the entire Court.

9. In Chicago & Northwestern Ry. v. Curl, 178 F.2d 497 (8th Cir. 1949), the Court held that evidence of tax computations affecting gross income was improper.

10. In the instant case, as in *Domeracki*, which held prospectively, there is no in-

dication that the jury verdict resulted from a misapprehension of tax consequences. The members of this panel, if they felt it necessary to rule on the issue, would not hold the action of the trial court erroneous.