James M. **GILROY**

v.

**ERIE LACKAWANNA RAILROAD
CO., Inc.**

No. 64 Civ. 3027.

United States District Court
S. D. New York.

Jan. 25, 1968.

See also D.C., 44 F.R.D. 3.

Phillips, Nizer, Benjamin, Krim & Ballon, by Theodore H. Friedman, New York City, for plaintiff.

Alexander & Green, by Donald Dunn, New York City, for defendant.

## OPINION

TYLER, District Judge.

Plaintiff has moved to set aside the verdict and for an order granting a new trial. Rules 50 and 59, F.R.Civ.P. Plaintiff's counsel also moves for an order specifically permitting him to interview each trial juror in this case.

This suit for damages, pursuant to the Federal Employers' Liability Act, 35 Stat. 65 (1908), as amended, 45 U.S.C. § 51 (1964), was commenced before the court and a jury on December 6 and concluded with a verdict for plaintiff in the sum of $80,000 on the evening of December 19, 1967. Although the jury rendered a general verdict as instructed, the foreman at the time of announcing the verdict volunteered the information that the jury had found contributory negligence and applied the comparative negligence damage computation.

In his formal motion papers, affidavits and voluminous brief, plaintiff's trial counsel assigns twelve specific errors committed or effected during the trial. He also charges that the jury conspired to withhold and successfully withheld from the court and counsel certain pertinent information during the jury selection voir dire, that the judge sympathized with and unduly favored the defendant throughout the trial with its rulings and that his adversary was guilty of wilful misstatements to the court in connection with a certain evidentiary issue which arose during the trial.

As defendant points out, the bulk of the eight day trial was devoted to the presentation of plaintiff's case. Five doctors testified as to plaintiff's condition from the date of the accident up to the trial; they also gave their detailed prognoses for plaintiff's future condition and claimed disability. The issues of liability and negligence were thoroughly explored both on direct and cross examination of plaintiff's witnesses and defendant's witnesses. The jury was fully informed of plaintiff's specific claims of damages by both witnesses and documentary evidence.

Of plaintiff's twelve specific assignments of error which, in the opinion of his counsel, required the setting aside of the verdict, two necessarily were not discussed and ruled upon at trial. A third claim or assignment of error was ruled upon during trial but deserves comment because of counsel's apparent misconception of what transpired at trial and because of his unwarranted and irrelevant accusations of his adversary in that area. The nine remaining specific points listed by plaintiff's counsel in his notice of motion need not be commented upon here, either because they were adequately discussed during trial or because the matters were plainly issues of fact resolved against plaintiff by the jury. A fourth contention, raised for the first time in counsel's brief, that of the alleged improper conduct of the judge, will also be briefly commented upon in this memorandum.

The claim that the verdict was against the weight of the evidence and grossly inadequate as a matter of law.

■ This assertion by counsel requires little discussion. The foreman's voluntary announcement that the jury had found contributory negligence and applied the comparative negligence damage computation as instructed for such an eventuality forecloses any serious legal claim of inadequate damages. Moreover, contrary to the voluminous arguments of plaintiff's counsel, there was evidence from which the jury could find carelessness on the part of Mr. Gilroy which played a part in bringing about the accident and his resultant injuries.

The claim of improper conduct by the jury.

Plaintiff's counsel contends that his client was denied a fair trial because the jurors failed to disclose that all or most of them had experienced in their lives "an enormous sickness or injury, which personal experience dominated and con-

trolled their evaluation of the plaintiff's case and the existence of which experiences on the part of said jurors were completely and improperly withheld from the Court and counsel during the selection of the jury".

█ This startling assertion is based upon an allegedly chance meeting of associate trial counsel for plaintiff with juror No. 10 after the trial. It is said that this juror informed counsel that all or most of the jurors had been obliged to overcome significant handicaps in their own lives and thus they reasoned that their verdict for plaintiff was best for him under all the circumstances— i. e., their verdict, in their judgment, was reasonably calculated to enable Gilroy to overcome his own handicaps.

On the basis of this interview as described in an affidavit of his associate, trial counsel presses for an order permitting him to interview all the other trial jurors and requiring a hearing before the court on the basis, presumably, of these interviews. Ultimately, of course, it would be the intention of plaintiff's lawyers to move for a new trial solely on the basis of the information obtained.

In my opinion, these arguments are plainly without merit. Although no transcript of the jury selection process has been made available to me, my notes fail to indicate that plaintiff's counsel asked the court to inquire of each venireman whether or not he or she had had significant "problem" or illnesses in his or her own life. Consequently, I am at a loss to see how counsel can responsibly accuse the jurors of not giving information for which they were not asked.

Beyond this, even if it be assumed that all of the jurors were to corroborate what juror No. 10 is said to have told associate trial counsel, I cannot conceive that the law would require the verdict to be set aside under such circumstances. Certainly counsel has cited no authority for such a proposition. Similarly, I cannot conceive of any jury selection method which would cast up twelve jurors of mature age who had never encountered a significant problem or handicap in life.

█ Finally, I specifically observe that it would be the height of impropriety for counsel to communicate with the trial jurors and interview them at this date. This observation is made upon the basis of the circumstances of this case and not upon the recent decisions of this court in United States v. Driscoll, 276 F.Supp. 333 (S.D.N.Y.1967), which, as I read them, are inapposite here.

The court's refusal to admit plaintiff's Exhibit 54 for identification and the claim of defense counsel's misrepresentations respecting that exhibit.

During the course of presentation of plaintiff's case, his counsel sought to introduce into evidence plaintiff's Exhibit 54 for identification (hereinafter "Exhibit 54") which consists of the medical records and findings of the Railroad Retirement Board in respect to the disability of James M. Gilroy. There can be no doubt that plaintiff's counsel pressed the admission of Exhibit 54 vigorously and on a number of occasions. Thus, there was considerable colloquy between court and counsel respecting the issues raised by the offer.

A considerable part of the lengthy brief of trial counsel on these motions is devoted to this issue. It is urged that the court erred in refusing to admit this exhibit and that counsel for the defendant, in the course of argument of the question, was guilty of gross misrepresentations of fact to the court concerning certain Railroad Retirement Board procedures—e. g., that counsel stated erroneously that the findings of the Board were not final but were subject to periodic review every six months or so.

The contentions of plaintiff's trial counsel confuse and distort the significant issues presented in this area and the bases on which the court made its exclusionary ruling. Consequently, the following observations may be in order:

1. Contrary to counsel's argument, there was and is no issue as to the competence of Exhibit 54. Defense counsel

never questioned the authenticity of the documents making up this exhibit, nor did the court.

2. The court did not exclude Exhibit 54 because it was not specifically or adequately listed in the pre-trial order as a prospective plaintiff's exhibit.

3. There can be no question but that, at least in the broad sense, the exhibit consists of records "made in the regular course of business" of the Board. Nevertheless, and notwithstanding the existence of the federal business records rule, 28 U.S.C. § 1732 (1964), it does not necessarily follow that admission of Exhibit 54 was required at the trial. The cases cited by counsel to establish the contrary are so easily distinguishable from the facts in this case that they do not require discussion here.

■ 4. In my view, the serious vices of this exhibit as evidence in this trial would have been several. First, the exhibit constitutes a finding by another agency or tribunal upon a critical issue which was to have been resolved by the jury. Although the analogy may not be perfect, to have permitted the jury in this case to see the findings of the Board on the issue of Gilroy's disability would have been akin to a trial judge in a criminal case informing the jury of his findings on the validity of a confession of guilt, which issue under current procedures is then put to that jury for its decision. Such practice has recently been criticized—and for understandable reasons. See United States v. Fayette, 388 F.2d 728 (2d Cir., decided Jan. 12, 1968). Second, it is beyond dispute that Exhibit 54 amounts to an extra-judicial finding which could not have been tested by cross-examination at this trial.

Moreover, since it was held in Eichel v. New York Central R.R. Co., 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963) that a defendant in a Federal Employers' Liability Act case cannot put Railroad

Board reports and findings into evidence, I am at a loss to understand why the rule should be different when a plaintiff in such an action offers such evidence.

Even assuming that the court committed error in excluding this exhibit, I am not convinced that it was harmful error for the simple reason that plaintiff offered two experts, Dr. Burman and Dr. Dickar, a Workmen's Compensation Board specialist on rehabilitation, who testified specifically and at length that Gilroy is permanently disabled, not only from working as a railroad worker, but from any kind of gainful employment.

The charge that the trial judge improperly favored defendant throughout the trial.

■ At page 98 of his brief, counsel for plaintiff frankly summarizes the substance of the off-the-record settlement discussions which took place between the court and counsel before and during trial. Although I do not recall "predicting" the jury verdict in the range stated, or indeed in any range, the remaining portions of his version of these discussions accords fairly well with my recollection thereof.[1] Counsel then goes on, however, to assert as follows:

"In this setting it was understandable that during the course of the trial, in view of the assumed likelihood of a substantial verdict in favor of the plaintiff, some leeway was given defendant's counsel on rulings as to admission and non admission of evidence and in submitting defendant's contentions and arguments to the jury. However, whether because of the cumulative effect of such a tendency to be 'lenient' towards the defendant or for other reasons, the result of this trial was that an unjust award was made to an individual human being, James M. Gilroy."

This is beside the point, however, for there was evidence to support the jury's evaluation.

[1]. If it is counsel's design to suggest that, had I been the trier of the facts, I would have awarded a higher recovery to plaintiff, counsel is correct in his surmise.

The complete trial record, of course, is or will be the only available indicator of whether this court erred in its rulings or was lenient to one side or another. Yet it may be worth noting that: (1) I do not recall that counsel for plaintiff ever called to my attention during the trial that I was being lenient toward the defendant, in or out of the presence of the jury; and (2) according to my notes, plaintiff's counsel had comparatively few exceptions to the court's charge to the jury. Curiously, if there was a point during the trial when this court succumbed to the weakness of sympathy toward one litigant or counsel, the trial record may indicate that that point came after the verdict and that the sympathy was directed toward none other than plaintiff's counsel.

From my vantage point, therefore, it might be tempting to construe counsel's quoted remarks as being contemptuous of this court. I decline to formally so find, however, in large part because I can understand the chagrin of counsel in view of the settlement history which he so frankly discloses as compared to the verdict rendered.

The motions and applications of plaintiff's counsel are denied in their entirety. It is so ordered.