**James M. GILROY, Plaintiff-Appellant,**

v.

**ERIE LACKAWANNA RAILROAD COM-PANY, Defendant-Appellee.**

**Dockets 34384, 34386.**

United States Court of Appeals, Second Circuit.

Argued Jan. 5, 1970.

Decided Jan. 29, 1970.

---

Theodore H. Friedman, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for appellant.

Donald M. Dunn, Alexander & Green, New York City, for appellee.

Before LUMBARD, Chief Judge, FRIENDLY, Circuit Judge, and JUDD, District Judge.*

LUMBARD, Chief Judge:

On December 19, 1967, James M. Gilroy, an employee of the Erie Lackawanna Railroad, was awarded $80,000 by jury verdict in the Southern District of New York after a trial of his suit against the Railroad under the Federal Employers' Liability Act, 45 U.S.C. § 51, et seq., for injuries suffered in June 1962 during the operation of a railroad turntable in Syracuse, New York. Thereafter Gilroy sought a new trial on the ground that numerous claimed errors during the trial had resulted in a grossly inadequate verdict. From Judge Tyler's denial of this motion, and of a motion for leave to interview the jurors, 279 F.Supp. 139 (S.D.N.Y.1968), notice of appeal was filed on February 19, 1968. From Judge Tyler's denial of a later motion for pre-judgment interest, 44 F.R.D. 3 (S.D.N.Y.1968), notice of appeal was filed on April 2, 1968. Accordingly, the record on these appeals was due to be docketed within forty days after the notices were filed on March 31, 1968, and May 12, 1968, respectively. Rule 11(a) Federal Rules of Appellate Procedure. See also Rule 12(a)–(c), Federal Rules of Appellate Procedure.

No steps having been taken to prosecute these appeals taken in February and April 1968, the defendant-appellee moved on December 23, 1969, to dismiss the appeals.

The failure of plaintiff's counsel diligently to prosecute the appeals according to the rules is clear enough. Although there were some conversations between counsel after the appeals were noticed in early 1968 regarding possible settlement, these were fruitless and did not continue beyond a few months. After these conversations had terminated the parties never stipulated or agreed regarding any extension of time to prosecute the appeals. The appellee's counsel's last inquiry on January 10, 1969, regarding the appeals went unanswered for almost one year until appellant's counsel served answering papers to this motion on January 2, 1970.

Plaintiff's counsel's excuses for twenty months of inaction are wholly inadequate and unpersuasive. Although the trial lasted from December 6 to 19, 1967, resulting in stenographic minutes of 1276 pages, the issues in this FELA suit were not complex or difficult. The labor of preparing the docket list and paginating the papers, and the trial engagements of counsel during the fall of 1969, fall far short of excusing complete disregard of the Federal Rules of Appellate Procedure. Appellant here was represented by a law firm with a staff of more than 50 attorneys and the engagement of one partner of such a firm is hardly an explanation for inaction.

At the very least, in civil cases where counsel in good faith is doing his best to prosecute an appeal but finds that other pressing engagements make it impossible to meet the deadlines of the Rules, an attempt should first be made to secure a stipulation from opposing counsel. Failing agreement of counsel, motion papers should be timely filed so that the application may be considered by one of the judges of this Court before the time period has expired. Appellant's counsel never made application of any kind to this Court until response was made to the motion to dismiss when, by affidavit dated December 31, 1969, Mr. Friedman asked for an additional

---

* Sitting by designation.

60 days "to complete the appeal by filing and serving the printed brief and appendix." The affidavit also asserted that he had "devoted the Christmas season to working on the draft brief," and upon the return of this motion on January 5, 1970, the Court was furnished with Xerox copies of a rough draft of more than 120 pages. Such a belated effort, apparently produced only in response to a motion to dismiss after 20 months of inaction, is not excusable even in the absence of a showing of special prejudice to the appellee.

But in this case we have the additional circumstance that Dr. McLaughlin, a treating physician and the defendant's one and only medical witness on the all-important question of damages, died just before the motion was heard. While it is true that his testimony could be read to the jury in the event a retrial were ordered, the inability to produce Dr. McLaughlin would be a very real prejudice to the appellee.

■■■ The orderly and fair administration of justice requires a firm enforcement of the Rules of Appellate Procedure and the speedy prosecution of appeals. In civil cases, where the parties are agreed to a slower pace we accept their agreements within reason provided they are filed with the clerk before the case is calendared for argument. But failing agreement, the burden is on the appellant to apply, before his time allowance has run, for additional time upon a showing of real need which will not unduly prejudice the appellee. Any dereliction the result of which is to place on the appellee the burden of moving to dismiss the appeal is evidence of a lack of good faith on the part of an appellant. Unless such application for extended time is made so that it may be considered before the allotted time has expired, it is evidence of a lack of good faith and, failing extraordinary circumstances, it constitutes neglect which will not be excused.

■■■ Henceforth, on facts showing such inexcusable neglect as we find here, an appeal will be dismissed. If the party whose appeal is thus dismissed is thereby aggrieved, his remedy will be against his attorney.

■■■ If any appellee is required to move for the dismissal of an appeal in a civil case, the cost of his doing so will be assessed against the appellant or, in the proper case, against appellant's attorney.

We deny the motion to dismiss the appeal, but we award $500 in costs to compensate the appellee for being compelled to make this motion in place of the appellant's motion for an extension of time which should have been made many months ago in 1968. In addition, inasmuch as appellant's inexcusable delay may cause additional expense to appellee, we direct appellant's counsel, Theodore H. Friedman, personally to pay to the appellee any costs which appellee may incur to secure medical testimony and the attendance of witnesses on the question of injuries, should any retrial be required as a result of the prosecution of the appeal. Appellant's counsel has himself suggested that we assess penalties on him personally rather than visiting on his client the extreme penalty of dismissal. *See* Rule 46(c), Federal Rules of Appellate Procedure.[1]

The appellant's application for an additional 60 days within which to docket the record and file his brief and appendix is denied; the time of the appellant to docket the record and file brief and appendix is extended to 30 days from the date this opinion is filed, failing which the clerk is directed forthwith to dismiss the appeal.

1. Rule 46(c) provides:
   *Disciplinary Power of the Court over Attorneys.* A court of appeals may, after reasonable notice and an opportunity to show cause to the contrary, and after hearing, if requested, take any appropriate disciplinary action against any attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with these rules or any rule of the court.