Irene COX, Administratrix of the Estate of Randall S. Cox, deceased, Libellant-Appellee,

v.

NORTHWEST AIRLINES, INC., a Minnesota corporation, Respondent-Appellant.

No. 15897.

United States Court of Appeals Seventh Circuit.

May 16, 1967.

Rehearing Denied Aug. 28, 1967.

Rehearing Denied Aug. 28, 1967, en banc.

Irving G. Swenson, John W. McCullough, Chicago, Ill., for respondent-appellant, Peterson, Lowry, Rall, Barber & Ross, Chicago, Ill., of counsel.

James A. Dooley, Chicago, Ill., for libellant-appellee.

Before DUFFY, Senior Circuit Judge, and CASTLE and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

The appellant, Northwest Airlines, Inc., prosecutes this appeal from a judgment entered against it in an admiralty action instituted in the District Court by the libellant-appellee, Irene Cox, administratrix. Libellant sought recovery of damages under the Death on the High Seas Act (46 U.S.C.A. § 761 et seq.) for the death of her husband. The action was tried to the court without a jury. The court made and entered findings of fact and conclusions of law, and awarded judgment against the appellant for $329,956.59.

The record discloses that the libellant's decedent, her husband, Randall S. Cox, a Captain in the United States Army, 29 years of age, was a passenger on appellant's Douglas DC-7C airplane N290, flight 293, which crashed in the Pacific Ocean on June 3, 1963 during a flight from McChord Air Force Base, near Seattle, Washington, to Elmendorf, Alaska, at approximately 11:12 A.M. at a point about one hundred sixteen miles west-southwest of Annette Island off the west coast of Canada. The flight had taken off from McChord at about 8:32 A.M. after having been briefed on the weather by both its dispatch office at the Seattle Airport and by a U. S. Air Force weather specialist at McChord, and having followed the usual procedures in preparation for flight. The crew reported by radio at 11:07 A.M. that it had been over Domestic Annette at 11:06 at an altitude of 14,000 feet and requested clearance to climb to 18,000 feet. No reason for the requested change in altitude was given. Domestic Annette is a fix-point at which directional radio bearings are obtained along the air route from McChord to Elmendorf. This was the last known transmission made by the crew of the aircraft. On the following day, June 4, 1963, floating debris was sighted in the Pacific Ocean about 35 nautical miles west of Domestic Annette. Approximately 1,500 pounds of wreckage identified as being from the aircraft, including life vests still encased in their plastic containers and extremely deformed seat frames, was recovered. The bodies of none of the crew or passengers were ever recovered.

The District Court made a number of findings with respect to facts and circumstances concerning the flight. But none of these subsidiary findings afford, or were relied upon by the court as affording, a basis for finding and concluding that any specific conduct attributable to the appellant constituted negligence and was a proximate cause of the crash. The court's conclusion that the negligence of appellant was the proximate cause of decedent's death is predicated upon the court's finding that:

"[A]s a result of the occurrence Randall S. Cox met his death. The instrumentality which produced the death of Randall S. Cox was under the exclusive control and management of the [appellant] and that the occurrence in question was such as does not ordinarily occur in the absence of negligence, and, further, that there is no possibility of contributing conduct which would make Randall S. Cox responsible;

that the facts herein justify a finding of negligence."

The appellant recognizes that the doctrine of res ipsa loquitur may properly have application in actions involving airline accidents. But the appellant contends that in the instant case it was error to apply that doctrine in resolving the issue of liability because there is substantial proof of the exercise of due care by the appellant and no countervailing evidence of specific negligence or even of unusual circumstances. Appellant urges that evidence of due care on its part precludes any inference of negligence arising from the occurrence in the absence of at least minimal supporting evidence and, therefore, libellant has not sustained the burden of proof requisite to an ultimate finding of negligence and has failed to prove her case by a preponderance of the evidence.

The evidence of due care to which appellant alludes concerns its maintenance records and procedures with respect to the aircraft involved; the qualified and certified status, and the competence, of the operating personnel of the aircraft and of the dispatcher; the safety training received by the crew; and the evidence that the flight was properly dispatched and the weather normal.

There is no evidence as to the cause of the aircraft's crash into the ocean or concerning what happened to affect the operation of the aircraft during the period following 11:07 A.M. and prior to the crash. In the absence of such evidence, the probative value of appellant's general evidence of due care is not of substantial import. Whether due care was exercised by the operating personnel of the aircraft in the face of whatever occurred to affect the operation of the aircraft can be appraised only in the light of knowledge of what that occurrence was, whether human or mechanical failure or some other incident, and of what if anything was or could have been done about it.

■ We perceive nothing in appellant's due care evidence which precludes an application of the res ipsa loquitur doctrine or conditions such application upon the libellant's responding with evidence to support some specific negligent act or omission on the part of appellant. Here the cause of the crash which resulted in the death of Randall S. Cox is wholly unexplained. And, as was cogently observed in Johnson v. United States, 333 U.S. 46, 49, 68 S.Ct. 391, 393, 92 L. Ed. 468:

> "No act need be explicable only in terms of negligence in order for the rule of *res ipsa loquitur* to be invoked. The rule deals only with permissible inferences from unexplained events."

■ We are of the opinion that the court properly applied the doctrine of res ipsa loquitur and that its finding of negligence was a permissible one—warranted though not compelled (Sweeney v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 57 L.Ed. 875)—and that the court's conclusion on the issue of appellant's liability is thus supported by the evidence and the application of correct legal criteria. Haasman v. Pacific Alaska Air Express, D.C.D.Alaska, 100 F.Supp. 1, affirmed sub nom, Des Marais v. Beckman, 9 Cir., 198 F.2d 550. Cf. Blumenthal v. United States, 3 Cir., 306 F.2d 16, 19; Trihey v. Transocean Air Lines, 9 Cir., 255 F.2d 824.

We turn to consideration of appellant's contentions that the District Court erred in its computation of the amounts of certain of the specific elements of damage it included in the $329,956.59 award it made.

Although the awards made on certain of the elements of damage here allowed appear to be generous we cannot say that they are clearly excessive. But this does not preclude us from reviewing the amount allowed for a given element from the standpoint of determining whether the court made an error in the manner of its computation of "a fair and just compensation for the pecuniary loss sustained" by the widow and two minor children of the decedent with respect to an otherwise proper element of dam-

age. And, in this connection, our review of the record, and of the court's findings and computations, convinces us that the court erred in two respects.

■ The court's computation of the loss of future contributions to the widow and children on the basis of what the court found the decedent's probable future earnings plus retirement income would have been was predicated on probable earnings and income increasing to amounts ranging from $15,655 to $20,608 per annum for the twenty-year period commencing with 1979. No reduction was made for income tax the decedent would have paid on the earnings and income so attributed to this twenty-year period. The deceased's beneficiaries could not logically and reasonably have expected to receive the money he would have paid in such taxes had he lived. Only the net income would have been available for their support. And there can be no pecuniary loss of income which would not have been available for contribution.

■ We agree with the rationale of the United States Court of Appeals for the Second Circuit as it appears to have been finally crystallized in Petition of Marina Mercante Nicaraguense, S.A., 364 F.2d 118, and conclude that the income level here attributed to the twenty-year period commencing with 1979 is such that a reduction for income tax is required to be made from the annual gross income during that period.[1] This is a case where the impact of income tax has a significant and substantial effect in the computation of probable future contributions and may not be ignored. While mathematical certainty is not possible, any more than it is in a prognosis of life expectancy and probable future earnings, nevertheless, an estimate may be made based generally on current rates, from which there should be computed the future income of the deceased after payment of Federal Income Taxes rather than before. O'Connor v. United States, 2 Cir., 269 F.2d 578, 584.

■■ The damages award also embraces an item of loss of inheritance to the widow predicated upon the court's findings that the deceased, had he lived his life expectancy at age 29.14, would have been survived by his wife and would have left an estate valued at $30,000. The court did not indicate or specify that this figure represented present value, and the record will not support an assumption that it did. The court's failure to discount this amount to its present value was error. A finding of loss based on a future expectancy must be reduced to present value when measuring pecuniary loss in federal wrongful death cases. Montellier v. United States, D.C. E.D.N.Y., 202 F.Supp. 384, 424.

The appellant advances certain additional contentions with respect to the propriety of the damages awarded. While we are not unimpressed by the merits of these arguments, they concern neither errors of computation nor the legal permissibility of the element of damage involved. These matters were peculiarly within the province of the trier of the facts, and we refuse to disturb his considered judgment thereon. Suffice it to say that we perceive no basis for a conclusion that the factual findings on which these allowances rest are clearly erroneous. Nor do they result in making the award of damages clearly excessive. We, therefore, will not extend this opinion to discuss these additional contentions.

The judgment of the District Court is affirmed insofar as it adjudicates the issue of the liability of the appellant, Northwest Airlines, Inc., to the libellant, and the cause is remanded to the District Court with directions that the court modify the judgment by reducing the amount of damages awarded therein to conform with the views herein expressed.

■ A motion of the libellant-appellee to strike from an additional appendix incorporated in appellant's reply brief copies of certain post-trial correspond-

1. The decedent's probable income level attributed to the period from his death un-til the year 1979 is not such that the impact of income tax need be considered.

ence addressed to appellant's counsel from an actuarial firm was taken with the case at the time of oral argument. The material to which the motion is addressed purports to review and analyze the computations contained in the District Court's findings and to supply further actuarial computations. The motion to strike is granted. An attempt to so supply matter dehors the record is improper.

In view of the disposition we have made of the appeal it is ordered that no costs on appeal be allowed to the libellant-appellee and that one-third of the appellant's costs on appeal be taxed and allowed against the libellant-appellee.

Affirmed in part and remanded with directions to modify damages awarded.