The judgment of the district court will be reversed and the proceedings remanded for a new trial.

**BURLINGTON NORTHERN, INC., Appellant,**

v.

**Priscilla G. BOXBERGER, Personal Representative of the Estate of Kenneth R. Boxberger, Deceased, Appellee.**

**No. 73–2173.**

United States Court of Appeals, Ninth Circuit.

Nov. 26, 1975.

Rehearing Denied Jan. 19, 1976.

Delbert W. Johnson (argued), Burlington Northern, Portland, Or., for appellant.

George M. Joseph (argued), Bemis, Breathouwer & Joseph, Portland, Or., for appellee.

## OPINION

Before KOELSCH and ELY, Circuit Judges, and VOORHEES,* District Judge.

ELY, Circuit Judge:

Suit in the District Court was instituted under the Federal Employers' Liability Act [F.E.L.A.], 45 U.S.C. §§ 51-60. Originally three separate actions were filed against the appellant railroad, one for the death of an engineer (Ritter), a second for the death of a fireman (Boxberger), and the third, for injury to a brakeman (Stanwood). At the time of the accident that gave rise to the suit, Ritter, Boxberger, and Stanwood were employees of the appellant. A collision occurred between a locomotive operated by these employees and a chain of boxcars escaping from the appellant's railroad yard in Bend, Oregon. The three cases were consolidated, and at the outset of the trial the railroad admitted liability, leaving the amount of damages as the only issue for trial. Early in the trial the claim of the injured brakeman was resolved by compromise. A jury verdict was rendered in the two remaining cases, and the judgment in favor of the survivors of the engineer (Ritter) was satisfied.

This appeal relates only to the jury's verdict awarding $335,000 for the death of Boxberger. Following entry of judgment for $335,000 on the jury's verdict, the railroad moved for a new trial or, in the alternative, for a reduction of the Boxberger verdict. The District Court denied the railroad's motion and this appeal followed.

## I. Issues on Appeal

On this appeal, the appellant raises three issues. The railroad argues that (1) the court committed prejudicial error in receiving the testimony of an expert economist presented by the Boxberger plaintiff; (2) it was error for the trial court to refuse to admit evidence of the amount of personal income tax which would have been payable from the gross earnings of the decedent, had he lived, and (3) it was error for the trial court to refuse to give the appellant's requested jury instruction No. 7, which read: "Any award to plaintiff will not be subject to federal income tax and therefore you should not add or subtract for such taxes in fixing the amount of any award."

## II. The Expert's Testimony

The sole expert witness in the case of Boxberger as to the economic loss was a 34-year-old professor specializing in labor economics at the University of Washington. The expert had received his Ph.D. in economics from Columbia University, and his doctoral dissertation involved a study of earnings profiles for workers in specific occupations. Since this case was his first as an expert witness in the valuation of a decedent's loss of future income, the trial court questioned him outside the presence of the jury as to the basis for his calculations. The appellant contends that this *voir dire* examination of the expert made it apparent that several major assumptions governing the validity of his opinion were either false or would not be established at trial. The appellant further argues that during the course of the trial it was clearly demonstrated that certain assumptions essential to the validity of the expert's opinion were not established and that the assumptions were proved to be false. Therefore, the railroad contends, the expert's testimony should not have been received and, since the ex-

* Honorable Donald S. Voorhees, United States District Judge, Western District of Washington, sitting by designation.

pert's opinion was the only evidence of the alleged total value of the lost pecuniary benefits, the trial court committed prejudicial error in failing to grant a new trial or, alternatively, to reduce the amount of the verdict.

The expert testified that, taking a current annual earnings figure of $18,048, the discounted present value of Boxberger's future earnings, had he lived, would amount to a minimum of $480,500. The appellant challenges several elements of these calculations, in addition to the general qualifications of the witness and the "starting point" of $18,048 in annual earnings. First, the expert deducted a maximum of 30% for the projected personal consumption of Boxberger had he lived. This was based on statistical studies of the personal consumption habits of the heads of similar households (i. e., an earning husband with a wife and three children). The appellant objects to the fact that the expert did not obtain information about the actual consumption habits of Boxberger, but instead relied upon statistical studies that the expert had obtained from a fellow professor. The appellant also challenges the expert's assumption that Boxberger spent 15 hours per week engaged in non-market family services (household chores, etc.), on the grounds that the widow did not affirmatively testify that this was a correct estimate. The appellant disputes the assumption that a 4.8% compound annual increase in railroad employees' earnings was probable over the next 34 years, an estimate which the expert based upon government data on the average earnings of railroad engineers. Finally, the appellant contends that the expert erred in failing to take account of any income tax impact and accordingly basing his conclusions entirely on gross income.

We have carefully considered each of the alleged defects in the expert's calculations. Our court has consistently followed the general rule that the admission of expert testimony generally lies within the sound discretion of the trial court. "It is for the trial court to determine, in the exercise of its discretion, whether the expert's sources of information are sufficiently reliable to warrant reception of the opinion. If the court so finds, the opinion may be expressed." *Standard Oil Co. of California v. Moore,* 251 F.2d 188, 222 (9th Cir. 1957), *cert. denied,* 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148 (1958). We cannot agree with the appellant that the trial judge abused this discretion in admitting the expert's testimony. His testimony clearly did not reach the level of the "rampant speculation" we condemned in *Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd.,* 416 F.2d 71, 85–87 (9th Cir. 1969), *cert. denied,* 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970). The professor was sufficiently qualified as an expert, offered ample explanation of his assumptions, and there were indeed factual bases (whether strong or weak) for all his conclusions. ". . . [C]onflicting factors which weaken opinion evidence are, at least in the federal view, best left to the trier of facts rather than affecting the foundation for admission of the answer itself." *Twin City Plaza, Inc. v. Central Surety and Insurance Corp.,* 409 F.2d 1195, 1200 (8th Cir. 1969). The asserted defects in the expert's assumptions merely raise issues of fact that were properly for the jury, and the appellant had protected itself by engaging in competent cross-examination. The district judge did not err in holding that the opinion testimony of the expert was admissible.

III.  *Evidence of the Impact of Income Taxes on Future Earnings*

We next consider an issue that has caused a great deal of controversy among the courts that have considered it. Our Circuit has dealt with the question in a number of cases, but we have never hitherto adopted a clear rule for uniform application. We refer to the question of whether the measure of recovery for loss of earnings in a personal injury case should be calculated on the basis of probable future *gross* earnings or estimated future *net* earnings after

the deduction of income taxes. In the context of the case now before us, the question presented is whether the trial court erred in refusing to admit evidence of the impact of income taxes on probable future earnings of the deceased. The appellant argues that by virtue of this award the Boxberger beneficiaries will be unjustly enriched, receiving substantially more than they would have had the accident not occurred and had Boxberger's future gross earnings been subjected to income taxes imposed by the United States and the State of Oregon.

## A. *Prior Cases*

Our court first considered the question of deduction of future income taxes in *Southern Pacific Co. v. Guthrie*, 180 F.2d 295, 302–03 (9th Cir. 1949), *aff'd on rehearing*, 186 F.2d 926, 927, *cert. denied*, 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343 (1951). *Guthrie* was an F.E.L.A. case in which we had under review an award of $100,000 to a 59-year-old railroad engineer for loss of earnings and pain and suffering resulting from the loss of his right leg. The appellant contended that the trial court had erred in refusing to grant a new trial on the ground that the verdict was excessive. In the first *Guthrie* opinion we affirmed, holding that we could not say the verdict was so excessive that the refusal to grant a new trial constituted an abuse of the trial judge's discretion. 180 F.2d at 306. Since a general verdict was involved, it was necessary to determine what portion of the verdict represented lost future earnings and what portion was related to pain and suffering. In determining that the present value of lost earnings amounted to $55,515, the court chose to apply the plaintiff's *net* earnings of $6,000 per year rather than his gross earnings of $6,893 per year. The court thereby endorsed the principle that likely income taxes should be deducted in calculating the amount of future lost earnings:

"Appellant argues that in any calculation of loss of earnings we must throw out the amounts to be paid in taxes, in

other words, confine his loss to his reasonably to be expected 'take-home' pay. Counsel for Guthrie challenge this, as they say the amount of taxes is purely speculative, and cite *Stokes v. United States*, 2 Cir., 144 F.2d 82, which seems to support them. We think, however, that for the expected period of Guthrie's life, he would have found taxes fully as certain as his prospect of continued earnings." 180 F.2d at 302.

On rehearing *en banc,* we again affirmed the trial judge's refusal to grant a new trial based on the excessiveness of the verdict. However, in the intermediate step wherein that portion of the award corresponding to lost earnings was calculated, we wrote:

"We are now persuaded that the figure $55,515.74 should be enlarged, somewhat, and in two respects. . . We think the court's view that the net take home pay, after taxes, would represent the actual loss, is correct; but we are now convinced that we cannot tell how much this would be.

\* \* \* \* \* \*

What Guthrie's ultimate earnings, net or gross, would be, cannot be foretold. While it may be prophesied that during his lifetime income taxes will continue, there is not equal certainty as to their impact on him. In *Chicago & N. W. Ry. Co. v. Curl*, 8 Cir., 178 F.2d 497, 502, the court held it not prejudicial error to refuse evidence of the amount of income tax and other deductions, because of the inherent uncertainty in such matters, saying, 'We may assume that the jury were aware of \* \* \* the fact that average earnings, net or gross, of the appellee for the future could not be definitely known.'" 186 F.2d at 927–28.

We went on to say that because of the uncertainties mentioned, the lost earnings were "somewhere between" the $55,515.74 (net) and $63,778.33 (gross), and that consequently the court could not assume that the trial judge was wrong in stating that the figure "ex-

ceeded $60,000." 186 F.2d at 928. Despite their differing treatment of the deduction for future income taxes, both *Guthrie* opinions concluded that the award was not so excessive as to require a new trial. Accordingly, it is apparent that the statements in *Guthrie* as to how the impact of future income taxes should be treated in the intermediate step of determining what portion of the award corresponds to lost earnings was dictum, language not essential to the result reached. Thus *Guthrie* did not establish a clear rule on the treatment of future income taxes. The ambiguity of *Guthrie* on this point is demonstrated by the fact that various courts have assigned conflicting meanings to it. In *United States v. Furumizo*, 381 F.2d 965, 971 (9th Cir. 1967) and *United States v. English*, 521 F.2d 63 (9th Cir. 1975), *Guthrie* was cited in support of a decision to uphold the deduction of future income taxes, while in *McWeeney v. New York, N.H. & H. R.R. Co.*, 282 F.2d 34, 36 n. 6 (2d Cir.), cert. denied, 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93 (1960), it was cited in support of a refusal to make a deduction for such taxes.

Our court has also considered the question in a number of cases under the Federal Tort Claims Act, 28 U.S.C. § 2674. Unlike F.E.L.A. cases, which are subject to federal law (*Urie v. Thompson*, 337 U.S. 163, 174, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); *Bailey v. Central Vermont Ry.*, 319 U.S. 350, 352, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943), the Federal Tort Claims Act incorporates the damages law of the jurisdiction wherein the alleged wrongful act occurred (28 U.S.C. § 1346(b); *O'Connor v. United States*, 269 F.2d 578, 584–85 (2d Cir. 1959); *McWeeney v. New York, N.H. & H. R.R. Co.*, 282 F.2d 34, 39 (2d Cir.), cert. denied, 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93 (1960)). Thus, in both *United States v. Becker*, 378 F.2d 319 (9th Cir. 1967), and *McCauley v. United States*, 470 F.2d 137 (9th Cir. 1972), we rejected the contention that the trial court erred in failing to deduct future income taxes from the the award because, under Ari-

zona law, the incidence of future income taxes is held to be of no consequence in arriving at a damage award. Contrariwise, in *United States v. Furumizo*, 381 F.2d 965 (9th Cir. 1967), and *United States v. English*, 521 F.2d 63 (9th Cir. 1975), we affirmed the trial court's deduction of future income taxes because such deduction was permissible under the underlying state law or the state law was silent on the question. *See also Simpson v. Knutsen*, 444 F.2d 523, 524–25 (9th Cir. 1971); *Binney v. United States*, 460 F.2d 263, 264 (9th Cir. 1972). Our research establishes that in F.E.L.A. cases, where federal law controls, our court has not yet taken a clear and unambiguous position on the question of whether future income taxation should be taken into account in calculating earnings that it is claimed will be lost in the future.

In the other Circuits, the leading case is the oft-cited *en banc* decision of the Second Circuit in *McWeeney v. New York, N.H. & H. R.R. Co.*, 282 F.2d 34 (2d Cir.), cert. denied, 364 U.S. 870, 81 S.Ct. 115 (1960). *McWeeney* was an F.E.L.A. case in which the trial judge had refused two jury instructions, one of which would have informed the jury that any award to be made was tax exempt and the other of which would have advised that plaintiff's net income after deduction of income taxes should be the basis of lost earnings. The Second Circuit upheld the trial judge by a vote of 3–2 as to the first instruction and 4–1 as to the second. Judge Friendly essentially gave three reasons for the majority's rejection of the net income instruction: (1) determination of future tax liability would be too speculative in light of such factors as changes in future tax rates, possible deductions for new dependents not yet in being, etc.; (2) that the use of net income theory would be too confusing—"a task that the jury cannot reasonably be expected to perform" (282 F.2d at 37); and (3) although the jury's failure to consider the impact of taxation may tend to make verdicts too high, this is counterbalanced by two other factors which the jury also does not take into

account—future inflation and the fact that plaintiff's attorney's fees, if contingent, must come from the award. At the time of the accident McWeeney was earning $4,800 per year, and the jury awarded him a total of $87,000 for the loss of his leg.

*McWeeney* did *not* hold that there should be no deduction for future income taxes in all cases. Rather, Judge Friendly, in speaking for the majority, adopted a flexible rule:

> "There may be cases where failure to make some adjustment for the portion of a plaintiff's or decedent's earnings that would have been taken by income taxes would produce an improper result; but these are at the opposite end of the income spectrum from McWeeney's." 282 F.2d at 38.

Thus, in subsequent cases, *McWeeney* has been interpreted to hold that in cases wherein the injured parties' income is beyond the "lower or middle reach of the income scale" (282 F.2d at 39), and consequently the proportional impact of future income taxation is quite substantial, it is proper, in the fair calculation of loss of future earnings, that future income taxes be deducted.

Some more certain specificity has been added to the *McWeeney* rule in subsequent cases. In the Second Circuit, income taxes have not been deducted in cases wherein the annual gross income in question amounted to $4,800 (*McWeeney, supra*), $6,300 (*Cunningham v. Rederiet Vindeggen A/S,* 333 F.2d 308, 314 (2d Cir. 1964)); $11,500 (*Petition of Marina Mercante Nicaraguense, S.A.,* 364 F.2d 118, 125 (2d Cir. 1966), *cert. denied,* 385 U.S. 1005, 87 S.Ct. 710, 17 L.Ed.2d 544 (1967)), and $11,150 (*Montellier v. United States,* 315 F.2d 180, 186 (2d Cir. 1963) (wherein it was indicated that the gross $11,150 figure was close to being large enough to merit reduction for future income taxes)). On the other hand, in cases wherein the injured party had an income above "the lower or middle reach of the income scale," future taxes have been deducted. In *LeRoy v. Sabena Belgian World Airlines,* 344 F.2d 266, 276

(2d Cir.), *cert. denied,* 382 U.S. 878, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965), future income taxes were deducted in the case of a geologist who had projected future earnings of $16,000 to $25,000 per year.

A particularly instructive case on the operation of the flexible *McWeeney* principle is the Seventh Circuit's opinion in *Cox v. Northwest Airlines, Inc.,* 379 F.2d 893 (7th Cir. 1967), *cert. denied,* 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968). In *Cox,* United States Army Captain was killed in an airplane crash, and his widow received an award of $329,956. Expert testimony projected that Cox's earnings would range from $15,655 to $20,608 annually in the twenty years following his retirement that would have likely occurred in 1979. The court held that no future taxes should be deducted from the decedent's projected earnings during the time he would have remained an army officer but remanded for recalculation of the damages, holding that future income taxes should be deducted from the decedent's later projected earnings ($15,655 to $20,608) during the time that would have been his post retirement period:

> ". . . No reduction was made for income tax the decedent would have paid on the earnings and income so attributed to this twenty-year period. The deceased's beneficiaries could not logically and reasonably have expected to receive the money he would have paid in such taxes had he lived. Only the net income would have been available for their support. And there can be no pecuniary loss of income which would not have been available for contribution.

> \* \* \* \* \* \*

This is a case where the impact of income tax has a significant and substantial effect in the computation of probable future contributions and may not be ignored. While mathematical certainty is not possible, any more than it is in a prognosis of life expectancy and probable future earnings, nevertheless, an estimate may be made

based generally on current rates, from which there should be computed the future income of the deceased after payment of Federal Income Taxes rather than before." 379 F.2d at 896.

The Second Circuit has held that the *McWeeney* Rule should be followed in all cases "where the question is one of federal law or the applicable state law is silent." *Petition of Marina Mercante Nicaraguense, S.A.,* 364 F.2d 118, 125 (2d Cir. 1966), and applies in cases tried to judges as well as to juries. *Montellier v. United States,* 315 F.2d 180, 186 (2d Cir. 1963). The *McWeeney* Rule has been favorably received in a number of other Circuits. *Petition of M/V Elaine Jones,* 480 F.2d 11, 28 (5th Cir. 1973), *modified on rehearing,* 513 F.2d 911 (1975), *cert. denied sub nom., In re Canal Barge Co., Inc.,* 423 U.S. 840, 96 S.Ct. 71, 46 L. Ed.2d 60 (1975); *Blue v. Western Ry. of Alabama,* 469 F.2d 487, 496 (5th Cir. 1972), *cert. denied,* 410 U.S. 956, 93 S.Ct. 1422, 35 L.Ed.2d 688 (1973); *Petition of United States Steel Corp.,* 436 F.2d 1256, 1274 (6th Cir. 1970), *cert. denied,* 402 U.S. 987, 91 S.Ct. 1649, 29 L.Ed.2d 153, *reh'g denied,* 403 U.S. 924, 91 S.Ct. 2227, 29 L.Ed.2d 720, 403 U.S. 940, 91 S.Ct. 2247, 29 L.Ed.2d 720 (1971); *Hartz v. United States,* 415 F.2d 259 (5th Cir. 1969); *Cox v. Northwest Airlines, Inc.,* 379 F.2d 893, 896 (7th Cir. 1967), *cert. denied,* 389 U.S. 1044, 88 S.Ct. 788 (1968). *See also Boston & Maine R. R. v. Talbert,* 360 F.2d 286, 291 (1st Cir. 1966) (refusing to deduct future income taxes); *United States v. Sommers,* 351 F.2d 354, 359–60 (10th Cir. 1965) (upholding the deduction of future income taxes); *Chicago & N. W. Ry. Co. v. Curl,* 178 F.2d 497, 502 (8th Cir. 1949) (refusing to deduct future income taxes).

## B. *Analysis*

■ Any fair analysis should begin with the just and elementary rule that "[t]he primary aim in measuring damages has been compensation, and this contemplates that the damages for a tort should place the injured person as nearly as possible in the condition he would have occupied had the wrong not occurred. . . ." C. McCormack, Law of Damages 560 (1935). It is thus well established that the measure of damages in an F.E.L.A. case is the pecuniary loss to the beneficiaries, the amount that they reasonably could have expected to have been applied to their benefit had the decedent lived. *Norfolk & Western Ry. Co. v. Holbrook,* 235 U.S. 625, 629, 35 S.Ct. 143, 59 L.Ed. 392 (1915); *Michigan Central R. R. Co. v. Vreeland,* 227 U.S. 59, 72–73, 33 S.Ct. 192, 57 L.Ed. 417 (1913). In this case, all that the appellant sought to do in the District Court was, essentially, somehow to alert the jury to the amount of the decedent's future *net* income. The appellant correctly points out that all that the Boxberger survivors actually lost, apart from the portion of Boxberger's future earnings that Boxberger would have personally consumed, was the difference between what Boxberger would have earned and the income taxes he would necessarily have been required to pay. If the accident had not occurred, it is wholly unrealistic to assume that Boxberger would not have been required to continue to pay income taxes on his gross earnings. Therefore, argues the appellant, if the theoretical underpinning of the measure of damages is to be compensation rather than punishment of the defendant in a nonpunitive damage case, evidence of the income taxes that would probably have been paid on the deceased's gross income in the future should be admissible.

■ Given the undeniable fact that the question is what amount would have been available to the survivors for support from the decedent's earnings if the decedent had not been killed, we believe it altogether right and proper that in cases wherein the annual gross income is such that future taxes would have a substantial effect, evidence of the decedent's past and future tax liability should be admitted if a reasonably fair and accurate estimate of his lost future income is to be assured. As our Judge Duniway wrote in *United States v. Fu-*

*rumizo*, 381 F.2d 965, 971 (9th Cir. 1967), "[t]he old saw about the certainty of taxes is still good. It is reasonably certain that what would have been available would have been after tax dollars, not pre-tax dollars." It seems clear that a tort claimant, or his heirs, receives much more than has actually been lost if the recovery, in tax-free dollars, is a sum equal to that on which income taxes would have been paid had future earnings been received. Under the compensatory theory of damages, applicable to our present case, this windfall over and above what Boxberger's survivors would have received had the accident not occurred cannot be justified in fairness or logic. Although many of the courts that have considered the question have rejected evidence of future tax liability,[1] most of the commentators who have carefully analyzed the issue have vigorously disagreed.[2]

■ Although we find the logic of the foregoing irrefutable, we think it fair to note what we perceive to be fallacies in the objections that have been raised to permitting evidence of net future income, rather than only gross income. The primary objection is that to permit a deduction of future tax liability involves too much speculation and uncertainty. We can give no better reply to this argument than the rebuttal written by two noted torts scholars almost twenty years ago:

". . . the argument is weak. In the first place it has no proper application to damages for *past* losses. In measuring them the tax can be computed and should be deducted. Moreover future taxes are no more speculative than many other items that go into prophecies about future losses in this uncertain world of ours—witness the future earnings of a young child or the future trends in the dollar's value. As long as our system stays wedded to the single lump sum recovery, our courts simply have to speculate about the uncertainties of the future. With anything as sure as "death and taxes" the courts are avoiding their responsibilities when they decline to make the best guess they can, once all the reasonably available evidence is brought before them. It is noteworthy that the British House of Lords has recently held that damages for past and prospective earnings should be based on estimated net income after taxes." II F. Harper & F. James, Law of Torts § 25.12 (1956) (footnotes omitted).[3]

We can see absolutely no reason why a court cannot admit evidence of the tax payments that a decedent or an injured earner would have been required to make, taking judicial notice of the current tax rates, and cautioning the jury to consider future changes in expense deductions, the age of dependents and corresponding exemptions for them, and the like. While not subject to precise mathematical exactitude, such a projection does not appear to be too un-

---

1. *See Annot.*, 63 A.L.R.2d 1393, 1398 (1959) and later cases in A.L.R.2d Supp.Service. The annotation concludes that the then majority view was that income tax consequences should not be considered.

2. *See* II Harper & James, Law of Torts § 25.12 (1956); Nordstrom, *Income Taxes and Personal Injury Awards*, 19 Ohio St.L.J. 212 (1958); Burns, *A Compensation Award for Personal Injury or Wrongful Death is Tax-Exempt: Should We Tell the Jury?*, 14 DePaul L.Rev. 320 (1965); Morris & Nordstrom, *Personal Injury Recoveries and the Federal Income Tax Law*, 56 A.B.A.J. 274 (1960); Stripp & Rowland, *Taking Account of the Impact of Income Taxes in Personal Injury and Wrongful Death*

*Cases—Recent Developments*, 36 Ins.Counsel J. 231 (1969); Note, 50 Ky.L.Rev. 601 (1962).

3. In England the courts follow the rule that the jury must consider the taxability of future earnings in calculating loss of earnings. *See British Transport Comm. v. Gourley*, [1956] A.C. 185, 3 All.E.R. 796, *overruling Bellingham v. Hughes*, 1 K.B. 643 (C.A.1949). In *Gourley*, Lord Goddard, writing for the majority, held that income tax consequences must be considered in fixing damages for past or future lost earnings because, if the plaintiff had not been injured but had earned the amounts represented by the award, it is clear that these earnings would have been subject to taxation.

certain, conjectural, or speculative[4] for the jury to consider. Certainly, such considerations are no more speculative than the possibility of death from natural causes, disabling, non-compensable injuries from other causes, or the future instability of familial relationships.

A second contention is that calculation of future tax liability would be too complex a task for the average jury. But today's sophisticated jurors surely have had some personal experience in determining their own tax liability, and in today's tax - conscious society we are confident that our juries and judges, with the aid of such competent expert testimony as may be received, are equal to the task and the responsibility.

Finally, it is argued that failure to consider the impact of future taxation is offset by two other factors that the jury does not consider, which tend to undercompensate plaintiffs for their injury: the impact of future inflation and the fact that the plaintiff bears the cost of his own attorneys' fees. As to inflation, that factor *was* implicitly included here in the estimate of the decedent's loss of future earnings, and thus considered by

the jury, because the expert's calculations included a 4.8% annual increase in the earnings of railroad engineers (this based on the historical annual increase in earnings in the railroad industry).[5] By use of this factor in the plaintiff's calculations, it was estimated that Boxberger, who was earning no more than $18,048 per year at the time of his death, would be earning almost $40,000 per year near the end of his anticipated life work expectancy of 34 years. Moreover, we have clearly held, in *United States v. English,* 521 F.2d 63 (9th Cir. 1975), that in computing damages to compensate a widow for the loss of her expectancy in the future earning capacity of her deceased spouse, a District Court should take inflation into account. We agree that this should be done in both jury and non-jury trials, and it was done here. Accordingly, any argument predicated on an assumption that inflation will not be considered has no application here.

■ Unlike inflation and taxation, both of which would most assuredly have occurred had the decedent lived, the impact of plaintiff's attorneys' fees has no relation to the jury's task of estimating

4. One commentator has pointed out that even if it be conceded that prediction of future tax liability is somewhat speculative, that is not a compelling reason for refusing to consider such evidence:

"This conjecture and speculation could be found in such things as: (1) the family status of the injured party in the years to come; (2) possible changes in the exemption and deduction provisions of the tax law; (3) possible changes in the rates of taxation; and (4) possible changes in the cost of living, thus reflecting itself on the income of the plaintiff. These items are speculative. But are they so speculative that we should refuse to let the defendant even try to show them? Indeed, which is more conjectural: the existence of income tax in this country along the pattern we now know it, or the continuance of the plaintiff's salary during exactly the same period? Yet, we have no real difficulty in letting the jury speculate as to the existence of the latter. We will even let the plaintiff try to show that he might have earned *more* salary in the future. If the plaintiff received the advantage of the speculation in his favor, why do we bar the defendant from even trying to show what

appears to be a smaller speculation in his favor?
Nordstrom, *Income Taxes and Personal Injury Awards,* 19 Ohio St.L.J. 212, 227 (1958).

5. The court in *United States v. English,* 521 F.2d 63 (9th Cir. 1975), explicitly recognized that the use of a projected annual increase based upon the past history of the industry implicitly takes account of the impact of future inflation:

"The . . . projected annual increase which was used to compute an estimate of decedent's lost gross earnings was based on the earnings growth history of persons employed in contract construction. It is axiomatic that a projection of future earnings which is based upon the 'regression,' or 'time series analysis,' of raw data about past earnings and past increases in earnings which were themselves affected by inflationary pressures, and which are unadjusted to remove the inflationary bias, will result in a future projection which incorporates the assumption that there will be future inflation similar to that of the past several years."
521 F.2d 63, 71 n. 5.

what the decedent's survivors would have received from the decedent if the accident had not occurred. Attorneys' fees simply are not relevant in the calculation of what the plaintiff would have received if the decedent had survived, and it would be no more logical to remind the jury that plaintiff will pay attorneys' fees, in hopes that the award might be increased, than to remind the jury that the defendant will have the additional expense of paying his attorneys, in hopes that the jury will be influenced to decrease the award. Attorneys' fees are related to private contracts between the litigants and the attorneys. They have no legitimate relevancy to the issue as to what amount of money is justly compensatory for the loss resulting from the defendant's tortious act.

■ We conclude that, as a matter of fairness and logic, the just approach would require a rule providing for the admissibility of evidence of, and corresponding deduction to account for, future income taxes in *all* cases. But our adoption of such a broad rule would place our court in conflict with a number of other Circuits that have endorsed the flexible *McWeeney* approach, allowing the trial judge to refuse evidence of future income taxes in circumstances wherein the estimate of future gross income is relatively modest. We think it is clear, however, that, even under the flexible *McWeeney* rule, as that has been refined in subsequent decisions, a case involving an income span of $18,048 to $40,000 in annual earnings is a case wherein "the impact of income taxes has a significant substantial effect in the computation of probable future contribu-

tions and may not be ignored." *Cox v. Northwest Airlines, Inc.,* 379 F.2d 893, 896 (7th Cir. 1967), *cert. denied,* 389 U.S. 1044, 88 S.Ct. 788 (1968).

Applying the *McWeeney* approach as it has now evolved, Boxberger's estimated future earnings span of $18,048 to $40,000 fits into the category of Cox's [6] $15,655–$20,608 and LeRoy's [7] $16,000–$25,000, in which the impact of future taxes was substantial, rather than in the category of McWeeney's [8] $4,800, Cunningham's [9] $6,300, and Montellier's [10] $11,150, in all three of which impact of future taxation for a married taxpayer with children approached *de minimis* proportions.

■ We do not necessarily here conclude that the jury's verdict of $335,000 in this case was, in the aggregate, so "grossly excessive" or "monstrous" as to shock our sense of judicial conscience. *See Vannoy v. Chicago, Burlington & Quincy R. R. Co.,* 462 F.2d 186 (9th Cir. 1972). However, that the verdict may not have been grossly excessive does not preclude our review of the amount awarded for a given element for purposes of determining whether there was a seriously prejudicial error in the method of calculation of the amount the beneficiaries reasonably could have expected to receive had the decedent lived. *Cox v. Northwest Airlines, Inc.,* 379 F.2d 893, 895 (7th Cir. 1967), *cert. denied,* 389 U.S. 1044, 88 S.Ct. 788 (1968); *Blue v. Western Ry. of Alabama,* 469 F.2d 487, 496 (5th Cir. 1972), *cert. denied,* 410 U.S. 956, 93 S.Ct. 1422 (1973).

Here, the record demonstrates beyond doubt that the trial court's exclusion of

---

6. 379 F.2d at 896 (1967).

7. 344 F.2d at 276 (1965).

8. 282 F.2d at 38 (1960).

9. 333 F.2d at 314 (1964).

10. 315 F.2d at 186 (1963). In using absolute dollar amounts as a basis of comparison, we recognize that a substantial decline in the purchasing power of the dollar has occurred since some of these cases were decided. However, the essence of the principle involved makes

the deduction of future income taxes turn on the substantiality of the proportional tax impact. Thus, although an income of $15,000–$20,000 or $16,000–$25,000 would not have as much purchasing power today as it did a decade ago, the proportional tax "bite" taken out of such incomes is much the same. Accordingly, the substantiality of the future income tax liability on such annual incomes, in the personal injury litigation context, is as significant today as it was at the time these cases were decided and cannot be ignored.

any evidence of future income taxes seriously prejudiced the appellants. The award substantially exceeded what the beneficiaries would have received had Boxberger lived, due to overcompensation in the form of pretax dollars that the survivors would never have received had the accident not occurred. At 1974 tax rates, using standard deductions, a married man earning $18,048 and claiming five exemptions would owe approximately 14% of his earnings in federal income taxes. Toward the end of his work life, based on a $40,000 income with two exemptions (the children having reached majority), the tax liability would rise to approximately 28%. Thus the award in this case possibly exceeded, by approximately 14–28%, that which it would have been had future income taxes been taken into account.

It is hardly unreasonable to assume that, had the jury heard evidence of the deceased's tax liability on his alleged future earnings, the jury, under appropriate instructions, would have reduced the award to account for the future taxes that would have been paid. The court instructed the jury:

> "Pecuniary loss is the value of those benefits measured in dollars which they, that is the plaintiffs, the widow and children in the case of Mr. Boxberger, which they *reasonably could have expected to receive* from the decedents had the decedents lives not been terminated." (Emphasis added).

The jury was expressly cautioned to consider:

> ". . . what their [the decedents] personal expenses and *other charges and deductions against their earnings were and what they would be expected to be in the future* and any other fact shown by the evidence as throws light upon the question of what pecuniary benefits each beneficiary might reasonably have been expected to receive from the decedents had they lived beyond the death in question." (Emphasis added).

Therefore, since the trial judge's decision to exclude all evidence of the taxes due on the decedent's future earnings necessarily resulted in an inflated award (i. e., more than was necessary fairly to compensate plaintiffs for their actual loss), we reverse and remand for a new trial, at which time evidence of future income tax liability will be admissible. In line with the Second Circuit, we hold that in cases wherein the gross earnings in question are beyond "the lower or middle reach of the income scale," and consequently "the impact of income tax has a significant and substantial effect in the computation of probable future contributions" to the beneficiaries, both parties should be permitted to introduce evidence of the extent to which future earnings would have been taxed.

## IV. *Instruction Re: Non-Taxability of Awards for Personal Injury*

The final issue is whether a jury should be instructed that awards received in personal injury or wrongful death actions are not taxable under the Federal income tax laws.[11] The appellant argues that, aside from whether taxes are deducted in computing lost earnings, there is also a significant risk that a jury in today's tax-conscious society will erroneously assume that the award *will be* taxable and thus will increase the award to make it big enough "so that plaintiff would get what they think he deserves after the imaginary tax is taken out of it." II Harper & James, Law of Torts § 25.12 (1956). The argument is well taken.

---

11. Section 104 of the Internal Revenue Code of 1954, 26 U.S.C. § 104 provides:

"(a) In general.—Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include—

\* \* \* \* \* \*

(2) The amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness. \* \* \* "

Some courts have confused this question with the question of the admissibility of *evidence* of future income tax liability, but the issues are analytically distinct. Assuming, for example, that the lost future earnings of a decedent would have been $100,000 per year and his tax liability on those earnings would have been $30,000, and further assuming that he could have worked one more year had the accident not occurred, calculation on the basis of *net* income should prevent an unjust and erroneous award of a $30,000 windfall (i. e., from awarding $100,000 total), an additional $30,000 that would not have been retained by the family had the accident not occurred. However, there is still the altogether reasonable probability that a tax-conscious jury, justifiably ignorant of the income tax exemption, would erroneously assume that the judgment would be taxable and consequently award an additional amount to compensate for the imaginary tax. Thus, in our example, a jury that is not allowed to hear evidence of future income tax, and which also erroneously assumes that the award will be taxable, may quite likely award $130,000 that the plaintiff will receive a double tax windfall, amounting to $60,000

more than would have been allowed had there been no accident.[12]

The majority of American jurisdictions that have considered the question have ruled that refusal to give the instruction is not error,[13] at least absent some affirmative evidence that the jury had improperly increased the award to compensate for the supposed, but non-existent, tax reduction. The issue has also generated extensive analysis by legal commentators, with the overwhelming majority favoring the giving of such an instruction rather than concealing a relevant truth from the jury.[14] Our Circuit appears never to have expressly resolved the issue.[15] Four Circuits have upheld the trial judge's refusal to give an instruction that the award is non-taxable (*Nichols v. Marshall*, 486 F.2d 791 (10th Cir. 1973); *Elston v. Shell Oil Co.*, 481 F.2d 608 (5th Cir. 1973); *McWeeney v. New York, New Haven & Hartford R. R.*, 282 F.2d 34, 39 (2d Cir. 1960), *cert. denied*, 364 U.S. 870, 81 S.Ct. 115 (1960) (with subsequent modifications hitherto discussed); *New York Central R. R. Co. v. Delich*, 252 F.2d 522 (6th Cir. 1958)), while one Circuit has held to the contrary (*Domeracki v. Humble Oil & Refining Co.*, 443 F.2d 1245 (3rd Cir.), *cert.*

---

12. *See* Note, 56 Minn.L.Rev. 503, 506 n. 21 (1972).

13. *See* Note 1, *supra*.

14. *See* II Harper & James, Law of Torts § 25.-12, at 1327–28 (1956); Burns, *A Compensation Award for Personal Injury or Wrongful Death is Tax-Exempt: Should We Tell The Jury?*, 14 DePaul L.Rev. 320 (1965); Feldman, *Personal Injury Awards: Should Tax Exempt Status Be Ignored?*, 7 Ariz.L.Rev. 272 (1965); Henderson, *Some Recent Decisions on Damages: With Special Reference to Questions of Inflation and Income Taxes*, Ins.Counsel J. 423 (1973); Morris, *Should Juries in Personal Injury Cases Be Instructed that Plaintiff's Recoveries Are Not Income Within the Meaning of the Federal Tax Law?*, 3 Defense L.J. 3 (1958); Nordstrom, *Income Taxes and Personal Injury Awards*, 19 Ohio St.L.J. 212 (1958); Stripp & Rowland, *Taking Account of the Impact of Income Taxes in Personal Injury and Wrongful Death Cases— Recent Developments*, 36 Ins.Counsel J. 231 (1969); 26 Ford.L.Rev. 98 (1957); 42 Geo.L.J.

149 (1953); 50 Ky.L.J. 601 (1962); 44 Ky.L.J. 384 (1956); 56 Minn.L.Rev. 503 (1972); 33 Ohio St.L.J. 972 (1973); 32 Tex.L.Rev. 108 (1953); 8 Tulsa L.J. 242 (1972); 4 U.C.L.A. L.Rev. 636 (1957); 25 U.Cin.L.Rev. 385 (1956); 9 Vand.L.Rev. 543 (1956); 11 Wash. & Lee L.Rev. 66 (1954).

15. The argument that the trial court erred in refusing to give an instruction on the non-taxability of personal injury awards was raised in *Cullinan v. Burlington Northern, Inc.*, 522 F.2d 1034 (9th Cir. 1975). In *Cullinan*, unlike the case now before us, there was no claim that the award given by the jury was in fact excessive. 522 F.2d at 1036. Since ". . . the award given was admittedly not excessive . . . .," the court affirmed, following the rule that erroneous instructions on damages do not require reversal when the award was not excessive and thus the defendant could not have been prejudiced by any such error. *See Vannoy v. Chicago, Burlington & Quincy Railroad Company*, 462 F.2d 186 (9th Cir. 1972).

*denied*, 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971)).[16]

■ The Third Circuit, recognizing the almost certain fact that a jury will erroneously assume the award itself is taxable if it is not instructed otherwise, held in *Domeracki, supra*, that trial courts in personal injury actions must instruct the jury that any award will not be subject to personal income taxes (and that the jury should not, therefore, add or subtract taxes after fixing the amount of the award). The sound reasons for informing the jury of the true tax consequences are well summarized in the following passage from *Domeracki:*

"Moreover, there are positive and persuasive reasons for giving the instruction. We are not unaware of the pervasive impact of taxation—federal, state, and local—in the lives of Americans. It has been properly observed that what we know as men, we should not ignore as judges. We know of the widespread attention given by the media to the tax consequences affecting winners of the Irish Sweepstakes, state-conducted lotteries, and contests conducted on television. We take judicial notice of the "tax consciousness" of the American public. Yet we also recognize . . . that few members of the general public are aware of the special statutory exception for personal injury awards contained in the Internal Revenue Code.

\* \* \* \* \* \*

The very purpose of a cautionary instruction is merely to dispel a possible misconception in the minds of the jury that the government will make a valid claim to a portion of the award. Its effect is simply to dissuade juries from improperly increasing the award because of this mistaken belief." 443 F.2d at 1251 (citations omitted).

We find ourselves in complete agreement with these sentiments. We cannot believe that, in the absence of such an instruction, many jurors would not assume that the award would be taxable and thus be inclined to increase their damage award accordingly. The benefits of informing the jury of the true tax consequences are so clear, and the burden in terms of time and the possibility of confusion so minimal, that we believe the balance is overwhelmingly in favor of giving such an instruction. To put the matter simply, giving the instruction can do no harm, and it can certainly help by preventing the jury from inflating the award and thus overcompensating the plaintiff on the basis of an erroneous assumption that the judgment will be taxable. Therefore, in future personal injury actions brought under the F.E.L.A. in our Circuit, the trial courts, at least when appropriately requested, must instruct juries that any award made for lost future earnings is not subject to personal income taxes.

The trial court's denial of both of the appellant's requests (to present evidence of the impact of future income taxation on future earnings, and to instruct the jury that the earnings award would not be taxable) had the possible effect of overcompensating the claimants by twice awarding taxes—once by using gross income to measure lost earnings and a second time, if the award was increased upon the fallacious assumption that an additional increment was needed to compensate for income taxes to be paid from the award.

The judgment is reversed, and the cause is remanded for a new trial on the issue of damages alone. Competent evidence of the impact of income taxes upon the decedent's alleged future earnings, if tendered, will be received, and the jury will be instructed as to the nontaxable status of the lost earnings por-

---

**16.** The Eighth Circuit has refused to decide the issue. *Raycraft v. Duluth, Missabe & Iron Range Ry. Co.*, 472 F.2d 27 (8th Cir. 1973);

*Rouse v. Chicago, R. I. & P. R. R. Co.*, 474 F.2d 1180 (8th Cir. 1973).

tion of a damage award.[17] This approach more accurately harmonizes with fair economic reality, more justly achieves the goal of compensating claimants for the actual loss suffered, and safeguards against the injustice of over-compensation.[18]

Reversed and remanded.

**17.** We suggest that on remand an instruction on the non-taxability of personal injury awards should take the following form:

"I charge you, as a matter of law, that any award made to the plaintiff in this case *because of lost or diminished earnings,* if any is made, is not income to the plaintiff within the meaning of the federal income tax law. Should you find that the plaintiff is entitled to an award of damages, then you are to follow the instructions already given to you by this Court in measuring those damages, and in no event should you either add to or subtract from that award on account of federal or state income taxes."

The foregoing instruction is, with an amendment that we have italicized, the pertinent jury instruction required to be given in personal injury actions in the Third Circuit. *Domeracki v. Humble Oil & Refining Co.,* 443 F.2d 1245 (3rd Cir.), *cert. denied,* 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971).

**18.** Our present holding will apply in all cases in our Circuit wherein "the question is one of federal law or the applicable state law is silent." *See McWeeney v. New York, N. H. & H. R. R. Co.,* 282 F.2d 34, 39 (2d Cir.), *cert. denied,* 364 U.S. 870, 81 S.Ct. 115 (1960).